UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Sylvia Cohen,

              Plaintiff,                CV-04-4098 (CPS)

   - against -                MEMORANDUM OPINION
                                    AND ORDER
JP Morgan Chase and Co. and
JP Morgan Chase Bank,

              Respondent.

----------------------------------------X

SIFTON, Senior Judge.

     Plaintiff Sylvia Cohen brings this action against defendants J.P. Morgan Chase & Co. and J.P. Morgan Chase Bank stating three claims for relief on her own behalf and on behalf of an as yet uncertified class: (1) defendants' violation of section 8(b) of the Real Estate Settlement Procedures Act, 12 U.S.C. §2607(b) ("RESPA"); (2) defendants' violation of the Truth in Lending Act, 15 U.S.C. §1601 *et seq.* ("TILA"); and (3) defendants' violation of section 349 of the New York General Business Law ("NYGBL"). By Memorandum and Order dated March 16, 2005, I granted defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Now before this Court is plaintiff's motion for reconsideration of that dismissal. For the reasons that follow the plaintiff's motion for reconsideration is denied.

BACKGROUND

     The following facts are drawn from the complaint and are accepted as true for purposes of this motion to reconsider the

dismissal of plaintiff's claims.

In September 2003, Cohen refinanced her residential mortgage loan with the defendants. The defendants presented Cohen with a closing statement, containing all of the fees charged for settlement services. One such fee was a "post-closing fee" of $225, purportedly for future services to be rendered by defendants. At the time of the closing defendants had yet to provide any services in exchange for this fee. Nor did defendants disclose what future services they intended to perform in exchange for the fee. After the dismissal of her claims, plaintiff learned that the fee was to be used to offset costs incurred by Chase in repackaging plaintiff's and other mortgages for sale in the secondary mortgage market.

## DISCUSSION

A motion for reconsideration pursuant to Local Rule 6.3 will be granted if the moving party presents factual matters or controlling decisions the court overlooked that might materially have influenced its decision. *Pereira v. Aetna Casualty and Surety Co. (In re Payroll Express Corp.)*, 921 F. Supp. 1121, 1123 (S.D.N.Y. 1996); *Violette v. Armonk Assocs., L.P.*, 823 F. Supp. 224, 226 (S.D.N.Y. 1993). Reconsideration is also appropriate in light of an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. *Doe v. New York City Dep't*

*of Social Servs.*, 709 F.2d 782, 789 (2d Cir. 1983); *Casino, LLC v. M/V Royal Empress*, 98-CV-2333, 1998 WL 566772, at *1 (E.D.N.Y. Aug. 21, 1998).

Local Rule 6.3 is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been fully considered by the court. *See Caleb & Co. v. E.I. Du Pont De Nemours & Co.*, 624 F. Supp. 747, 748 (S.D.N.Y. 1985). In deciding a Local Rule 6.3 motion, the court will not allow a party to use the motion as a substitute for appealing from a final judgment. *See Morser v. A.T. & T. Information Systems*, 715 F. Supp. 516, 517 (S.D.N.Y. 1989); *Korwek v. Hunt*, 649 F. Supp. 1547, 1548 (S.D.N.Y. 1986). Therefore, a party in its motion for reargument "may not advance new facts, issues or arguments not previously presented to the court." *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, No. 86 CIV. 6447 (JMC), 1989 WL 162315, at *3 (S.D.N.Y. Aug. 4, 1989).

## Section 8(b) of RESPA

Section 8(b) of RESPA was enacted in response to Congress's finding that

> significant reforms in the real estate settlement process are needed to insure that consumers . . . are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country.

12 U.S.C. §2602(a). Congress declared that one purpose of the Act

was, "the elimination of kickbacks or referral fees that tend to

increase unnecessarily the costs of certain settlement services."

12 U.S.C. §2602(b). Congress achieved this purpose through

Section 8 of RESPA, codified at 12 U.S.C. §2607, entitled

"prohibition on kickbacks and unearned fees" which states in

relevant part:

> (a) Business referrals
>
> No person shall give and no person shall accept any
> fee, kickback, or thing of value pursuant to any
> agreement or understanding, oral or otherwise, that
> business incident to or a part of a real estate
> settlement service involving a federally related
> mortgage loan shall be referred to any person
>
> (b) Splitting charges
>
> No person shall give and no person shall accept any
> portion, split, or percentage of any charge made or
> received for the rendering of a real estate settlement
> service in connection with a transaction involving a
> federally related mortgage loan other than for services
> actually performed.

In my March 16, 2005 opinion, granting defendants' motion to

dismiss, I held that defendants' actions as described in the

complaint did not violate RESPA, because the Second Circuit's

decision in *Kruse v. Wells Fargo Home Mortgage, Inc.,* 383 F.3d 49

(2d Cir. 2004) held that section 8 did not apply to

"overcharges." An overcharge is a lender's provision of services

to a borrower at an unreasonably high price. *Id.* I concluded that

assuming Cohen was charged a fee for which no services were

performed, such fee was a quintessential overcharge. I also

declined to grant *Chevron* deference to a Department of Housing
and Urban Development's ("HUD") interpretation of RESPA as
creating a violation where, "one settlement service provider
charges the consumer a fee where no, nominal, or duplicative work
is done." 66 Fed. Reg. 53053, 53057, since the language of RESPA
clearly contemplates the existence of a third-party with whom the
charges have been split.

Plaintiff now argues that the *Kruse* court's definition of
"overcharge" contemplates that some service has been provided,
and does not apply when no settlement service at all was provided
to the consumer. Plaintiff also argues that *Kruse* permits
application of RESPA even when the fee is not "split" with a
third party because no third party exists. These arguments repeat
arguments made by plaintiff in her initial opposition to the
motion to dismiss, and were rejected in my earlier opinion. As
already noted, a motion for reconsideration is not an opportunity
for "repetitive arguments on issues that have already been
considered fully by the court." *Caleb & Co.* 624 F. Supp. at 748.
Accordingly, plaintiff's motion for reconsideration on these
grounds is denied.

Plaintiff also argues that reconsideration is appropriate on
the basis of newly discovered evidence. Plaintiff states that on
March 24, 2005, defense counsel conceded to plaintiff's counsel
that the $225 post-closing fee was not for a settlement service

provided by Chase to the consumer, but was instead used to offset
future costs incurred by Chase in repackaging mortgages to sell
in the secondary lending market. This "new evidence" does not
change the inquiry under Section 8. I have previously concluded
that Chase did not violate RESPA by charging a post-closing fee
for *no* settlement service. Accordingly, there cannot be liability
where Chase charged a post-closing fee to cover its costs in
reselling plaintiff's and other mortgages. The fact that
plaintiff's fee was used for purposes of no direct benefit to
plaintiff, such as paying dividends to stockholders or increasing
bank employee salaries, establishes that the fee was not charged
for a service provided plaintiff.

Plaintiff argues that if her motion for reconsideration is
denied on the above basis, then she should be granted leave to
replead her claim under a section 5 of RESPA, which requires the
lender to provide the borrower with a "Good Faith Estimate" of
the amount or range of charges for specific settlement services
that the borrower is likely to incur. 12 U.S.C. §2604(c).
Plaintiff alleges that Chase has violated this provision because
the "post-closing fee" is not a fee for performing a settlement
service. The *Kruse* court defined a settlement service as
including

> any service provided in connection with a real estate
> settlement including, but not limited to, the
> following: title searches, title examinations, the
> provision of title certificates, title insurance,

services rendered by an attorney, the preparation of
documents, property surveys, the rendering of credit
reports or appraisals, pest and fungus inspections,
services rendered by a real estate agent or broker, the
origination of a federally related mortgage loan
(including, but not limited to, the taking of loan
applications, loan processing, and the underwriting and
funding of loans) and the handling of the processing,
and closing or settlement.

282 F.3d at 53, n. 2.  However, assuming arguendo, that no

estimate including a "post-closing fee" was included in Chase's

good faith estimate, Chase has not violated the cited provision

of RESPA. That provision specifies what charges for settlement

services must be included in the lender's good faith estimate of

costs to be incurred. The provision does not preclude the

inclusion of other charges unrelated to the provision of

settlement services in the estimate.

Moreover, although no court in this Circuit has addressed

the issue, every other court that has addressed it has found that

no private right of action is created by 12 U.S.C. §2604(c).

Under *Cort v. Ash,* 422 U.S. 66, 78 (1975), whether a federal

statute creates a private right of action requires consideration

of: (1) whether the statute was created for the plaintiff's

special benefit, (2) whether there is any indication of

legislative intent to create a private remedy, (3) whether a

private remedy would be consistent with the legislative purpose,

and (4) whether the area is so traditionally relegated to the

states that it would be inappropriate to infer a cause of action

based solely upon federal law. Because the ultimate question is one of legislative intent, the most significant of these factors is whether there is any indication of congressional intent to create a private remedy. *See, e.g., Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15-16 (1979). The prior version of §2604 contained a provision for a private right of action, Pub.L.No. 93-533 §6, 88 Stat. 1158 (1974), but that provision was eliminated when Congress amended the statute in 1976. Pub.L.No. 94-205 §5, 88 Stat. 1726 (1976). Thus, the courts which have considered the issue have uniformly concluded that Congress did not intend to create a private right of action. *Collins v. FMHA-USDA,* 105 F.3d 1366, 1368 (11th Cir. 1997); *Beard v. Worldwide Mortgage Corp.*, 354 F.Supp.2d 789 (W.D.Tenn. 2005); *Pressman v. Meridian Mortg. Co.*, Inc., 334 F.Supp.2d 1236 (D.Hawai 2004); *Reese v. 1st Metropolitan Mortg. Co.*, 2003 WL 22454658 (D.Kan. 2003); *Marbury v. Colonial Mortg. Co.*, 2001 WL 135719 (M.D.Ala. 2001); *McWhorter v. Ford Consumer Finance Co., Inc.,* 33 F.Supp.2d 1059 (N.D.Ga. 1997); *Mentecki v. Saxon Mortg., Inc.,* 1997 WL 45088 (E.D.Va. 1997); *Brophy v. Chase Manhattan Mortg. Co.,* 947 F.Supp. 879 (E.D.Pa.,1996).

NYGBL §349

Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. GEN. BUS. Law. §349(a). To establish a claim under §349, a consumer must

demonstrate: (1) the defendant's act was misleading in a material way; (2) the act was directed at consumers; and (3) the plaintiff has been injured as a result. *Maurizio v. Goldsmith,* 230 F.3d 519, 521 (2d Cir. 2000). An act is deceptive if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003)(quoting *Maurizio*, 230 F.3d at 521). The act need not constitute common-law fraud to be actionable. *Id.* Where there is no coercion, "the focus is on whether the amount of the charge is disclosed." *Zuckerman v. BMG Direct Marketing, Inc.*, 290 A.D.2d 330 (N.Y. App. Div. 2002). In my May 16, 2005 opinion I concluded that there was no coercion even assuming that plaintiff could obtain a mortgage from Chase only by consenting to the fee. Because it was undisputed that the amount of the charge was disclosed, I found that there was no violation of §349.

Plaintiff now alleges that there was coercion because on February 28, 2003, plaintiff was required to and did pay a $425 non-refundable application fee and appraisal fee to Chase in connection with her mortgage application. Plaintiff believes that defendants' possession of her non-refundable deposit created a disparity in bargaining power that removes this case from the general rule that consumer fraud claims "may not be predicated upon fully disclosed facts." *Negrin v. Norwest Mortgage, Inc.* 263 A.D.2d 39, 50 (2d Dept. 1999). Plaintiff concedes that she did

not refer to the $425 non-refundable deposit in her complaint, or
at any time prior to this Court's decision dismissing her
complaint. However, she argues that her claim was dismissed
because I determined that she could plead no set of facts which
would entitle her to relief, when in fact, there was some set of
facts that would entitle her to relief, namely that a non-
refundable deposit had created a coercive situation, such that
disclosure of a fee was insufficient to avoid liability under
§349.

However, in deciding whether a plaintiff could prove some
set of facts which would entitle her- to relief a court must
"accept[] all factual allegations in the complaint as true, and
draw[] all reasonable inferences in the plaintiff's favor,"
*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).
In the present case, plaintiff made no reference in her complaint
to the non-refundable deposit. There was accordingly no way for
the court to "reasonably infer" that the plaintiff had made a
non-refundable deposit.

Furthermore, even considering the existence of a non-
refundable deposit, such consideration would not change the
outcome in this case. The existence of the $425 deposit did not
create a situation in which, "any reasonable person would
conclude . . . that the only sane thing to do was to pay the
charges." *Cf. Negrin v. Norwest Mortgage Inc.,* 263 A.D. 2d 39,

supra, at 50. In *Negrin*, on which plaintiff primarily relies:

> The plaintiff was at Norwest's [the lender's] mercy. If
> she wanted her mortgage satisfied to enable her to sell
> her condominium and move, the plaintiff had no choice
> but to pay the $23.50. Any reasonable person would
> conclude, as the plaintiff did, that the only sane
> thing to do was to pay the charges rather than
> jeopardize the closing and the sale of her condominium.

263 A.D.2d at 50. Here, plaintiff was not selling her home and

moving. Her choice not to take a mortgage with Chase will not

prevent her refinancing her house with another lender. The $425

deposit compensates the lender for the time it spends evaluating

a consumer's mortgage application. Its existence did not so alter

the bargaining positions of the party as to render it irrational

to refuse to pay for a post-settlement fee. Accordingly, as I

held in my earlier opinion, "[t]he defendants therefore enjoyed

no greater bargaining power than in any other mortgage

transaction, and Cohen was not prevented from seeking financing

from other sources."

Plaintiff argues in the alternative that because Chase

represented the post-closing fee as a "settlement fee" when it is

actually used to offset future costs incurred by Chase in

repackaging mortgages to sell in the secondary lending market,

Chase is materially misleading consumers in violation of §349.[1]

However, as long as the full amount was disclosed to the

consumer, there was no violation of §349.  For example, in

---

[1] see page 6 for the definition of "settlement service."

*Zuckerman v. BMG Direct Marketing*, 290 A.D.2d 330 the court found
no violation of §349 where a mail-order vendor disclosed inflated
shipping and handling charges. In that case, it did not matter
that the full amount was not actually used for shipping and
handling (and could in fact been used to offset future costs, or
for any other number of purposes). Similarly, in *Lewis v. Hertz
Corp.*, 181 A.D.2d 493, 494 (N.Y. App. Div. 1992), Hertz could
charge consumers who returned rental cars with empty tanks far
more per gallon of gas than the actual value of the gas. It was
of no significance that a large portion of the consumer's "gas"
bill was actually not going to pay for gas, but rather could be
used for any other Hertz purpose. Accordingly, plaintiff's
motion for reconsideration on this ground is denied.

CONCLUSION

For the reasons set forth above, the plaintiff's motion for
reconsideration is denied.

The clerk is directed to furnish a filed copy of the within
to the parties and the Magistrate Judge.


SO ORDERED.

Dated :   Brooklyn, New York
          January 4, 2006


                         By: /s/ Charles P. Sifton (electronically signed)
                             United States District Judge