UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Sylvia C. Cohen,

                    Plaintiff,                    CV-04-4098 (CPS)

    - against -                                   MEMORANDUM
                                                  AND ORDER
J.P. Morgan Chase & Co. &
J.P. Morgan Chase Bank.

                    Defendants.

----------------------------------------X

SIFTON, Senior Judge.

        Sylvia Cohen ("plaintiff") brings this proposed class action

against J.P. Morgan Chase & Co. and J.P. Morgan Chase Bank

("Chase") (collectively, "defendant"), seeking damages for

violations of Section 8(b) of the the Real Estate Settlement

Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2607(b), and

section 349 of the New York General Business Law (GBL).

Presently before the Court is defendant's motion for summary

judgment pursuant to Federal Rule of Civil Procedure 56.  For the

reasons stated below, the motion is denied.

**I. Factual Background**

        The following facts are taken from the parties' Local Rule

56.1 statements of material facts and submissions of the parties

in connection with this motion.  Disputes are noted.

        In February 2003, plaintiff and her husband, Richard L.

Cohen (collectively, "the Cohens") applied for a Chase loan in

order to refinance their cooperative apartment in Brooklyn, New York.  First Am. Compl. at ¶ 6 and ¶ 20 ("Compl.").  On February 28, 2003, Mr. Cohen wrote a $425 check to Chase in payment of a non-refundable application fee.  *Id.*  Chase thereafter sent the Cohens several documents in connection with the loan, including a Good Faith Estimate of Settlement Charges.  Deposition of Richard Cohen at 69 ("R. Cohen Dep.").  In the section entitled "Items Payable in Connection with Loan," the words "delivery fees" were crossed out, and the words "Post Closing Fee to JP/Morganchase Bank" written in, together with the amount of $225.  Anderson Decl. Ex. G., Plaintiff's Ex. 2.  Another document, entitled "Good Faith Estimate of Settlement Charges ("GFE"), listed "Post Closing Fees" of $225 under the line "Additional Settlement Charges."  Siopis Dec. ex. A., Defendant's Ex. 10.  The mortgage transaction closed on September 23, 2003.  Defendant's Ex. 5. Later that day, the Cohens reviewed the HUD-1 statement and for the first time noticed the post-closing fee.  R. Cohen Dep. at 73-74; Sylvia Cohen Deposition at 107-110 ("S. Cohen Dep."). In response to questioning at their depositions, Mr. and Mrs. Cohen both testified that they did not feel coerced or pressured to pay the fees associated with the closing documents.  S. Cohen Dep. at 88-89; R. Cohen Dep. at 87-89.

Chase maintains that it charged the post-closing fee to cover 'post-closing services.'  Ward Decl. ¶ 17; Siopis Decl. ¶

4.  Plaintiff disputes this.[1]  As described by Chase, post-closing services include: reviewing the documents received from the settlement agent to ensure that the agent followed the Chase closing instructions and that the file is complete, correcting mistakes in the documents, retrieving missing documents, combining the closing documents with the existing underwriting file in an organized fashion, sending that file to the National Post Closing center ("NPC"), and thereafter forwarding any late-arriving documents to NPC.  Siopis Decl. ¶ 5, Ward Decl. ¶ 7-9. NPC employees thereafter review the files for any errors in collateral documents that might affect investors' willingness to purchase the loans.  *Id.* at ¶ 11.  The primary purpose of post-closing review of loans is to ensure their salability on the secondary mortgage market.  Ward Decl. ¶ 15.

Plaintiff's loan file contains checklists and other documentation that indicate that post-closing review was performed on her loan at Chase's regional operations center and

---

[1]Pursuant to Local Rule 56.1, defendant produced a Statement of Material Facts.  Paragraphs 13-22 describe 'post-closing services' that Chase claims to perform on all mortgage loans after closing.  In its correspondingly numbered responses to defendant's Rule 56.1 Statement, plaintiff objected to each of these numbered paragraphs on the grounds that they set forth testimony about facts that defendant knew to be contradicted by unspecified testimony and evidence submitted by plaintiff, and admitted only that the declarations of Kathie Ward and Sophia Siopis submitted in support of defendant's motion made representations regarding the services.  Defendant claims that this objection is not effective as a denial of its description and conclude that plaintiff does not dispute that it performs post-closing services.  D. Mem. in Supp. at 6, 11; D. Reply at 9, 10, 23.  Whether or not plaintiff's 'objection' should be considered a denial, *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001), plaintiff's statement that she received no benefit from any post-closing actions taken by Chase suffices to raise a genuine dispute of fact as to the nature of the 'services' for which the fee was sought.

at NPC.  Ward Decl. ¶ 9.

The post-closing fee was instituted sometime between the mid-1980s and the mid-1990's.  Steinfeld Dep. at 29, Siopis Decl. ¶ 2, 4, Ward Decl. ¶ 3.  It was charged from that point until April, 2007, when Chase shifted to a fee structure that did not include a post-closing fee.  Ward Decl. ¶ 4.  Chase states that the decision to charge the fee grew out of the desire to break up a large up-front fee and instead charge borrowers smaller fees throughout the loan process.  Steinfeld Dep.  38-39., D. Reply at 16.

Chase states that post-closing services were and still are performed on all loans handled by Chase, even though the fee is no longer charged, and in the past was only charged on some loans.  Ward Dep. at 26.  The fee was only charged in the Northeast division of Chase, and only in two of the four states in that division. Steinfeld Dep. at 21, 22, Anderson Decl., Ex. D.  Chase states that it did not charge the fee in all areas of the country in which post-closing services were performed because decisions about fee structures were decentralized at the time the fee was instituted.  Ward Decl. ¶ 3, Ward Dep. at 28-29.

## II. Procedural History

Plaintiff filed her complaint in this action on September 22, 2004.  By Memorandum and Order dated March 16, 2005, I granted defendant's motion to dismiss plaintiff's complaint

pursuant to Fed. R. Civ. Pro. 12(b)(6) on the ground that it failed to state a claim under RESPA § 8(b) because (1) the fee at issue was analogous to an "overcharge," which *Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49, 55-57 (2d Cir. 2004), held was not prohibited by § 8(b); (2) plaintiff failed to plead that the challenged fee represented part of a charge split between defendant and one or more third parties as required by § 8(b); and (3) the complaint failed to state a deceptive practices claim under §349 of the New York General Business law because the pleaded facts demonstrated that the challenged fee was disclosed. *Cohen v. J.P. Morgan Chase & Co.*, 2005 U.S. Dist. LEXIS 45466 (E.D.N.Y. March 16, 2005). I subsequently denied plaintiff's motion for reconsideration. *Cohen v. J.P. Morgan Chase & Co.*, 2006 U.S. Dist. LEXIS 597. (E.D.N.Y. January 4, 2006).

On August 6, 2007, the Court of Appeals vacated the judgment of dismissal and remanded the case for reinstatement of the complaint, on the grounds that *Kruse* does not control this case. *Cohen v. J.P. Morgan Chase & Co.*, 498 F.3d 111, 113 (2007) (hereinafter "*Cohen I*"). The Circuit concluded that because RESPA §8(b) is ambiguous as to whether the section applies to undivided, as well as divided, unearned fees, the interpretation of the Department of Housing and Urban Development ("HUD")[2] that RESPA does apply to such fees should be accorded deference under

---

[2]The federal agency charged with administering RESPA.

*Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837, 103 S.Ct. 2778, 81 L.Ed. 2d 694 (1984). *Id.* Regarding the GBL § 349 claim, the Court stated that New York law offers "some support" for the conclusion that a post-closing fee could not be objectively misleading (and therefore would not qualify as a deceptive act under the statute), if it was disclosed prior to closing. *Id.* at 126. Regardless, stated the court, collecting fees in violation of state and federal laws may satisfy the misleading element of the statute. *Id.* Therefore, this Court should not have concluded as a matter of law that the charge was not a deceptive practice under § 349.

On October 12, 2007, plaintiff filed her First Amended Complaint, setting forth the claims listed above. The defendant moved for summary judgment.

## III. Discussion

### A. Summary Judgment Standard

A court must grant a motion for summary judgment if the movant shows that "there is no genuine issue as to any material fact" and that "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c). Summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987). In order to defeat such a motion, the non-moving party must raise a genuine issue of material fact. "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elec. Inspectors, Inc. v. Village of East Hills*, 320 F.3d 110, 117 (2d Cir. 2003). A fact is material when it "might affect the outcome of the suit under the governing law." *Id.* Although all facts and inferences therefrom are to be construed in the light most favorable to the non-moving party, the non-moving party must raise more than a "metaphysical doubt" as to the material facts. *See Matsushita*, 475 U.S. at 586; *Harlen Assocs. v. Vill. of Mineola*, 273 F.3d 494, 498 (2d Cir. 2001). The non-moving party may not rely on conclusory allegations or unsubstantiated speculation. *Twin Labs., Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir. 1990). In deciding such a motion the trial court must determine whether "after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

**B. Plaintiff's RESPA Claim**

*1. RESPA*

Congress enacted RESPA in 1974 to protect home buyers from "unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601. RESPA's legislative history identifies major problem areas that had to "be dealt with if settlement costs are to be kept within reasonable bounds." HUD RESPA Statement of Policy 1999-1, 64 Fed. Reg. 10080, 10082 (1999) (quoting Senate Report No. 93-866 *6547 (1974) reprinted in 1974 U.S.C.C.A.N. 6548 (the "Senate Report")). One such problem area was the "[a]busive and unreasonable practices within the real estate settlement process that increase settlement costs to home buyers without providing any real benefit to them." *Id.* However, "reasonable payments in return for services actually performed or goods actually furnished" were not intended to be prohibited. *Id.*, quoting the Senate Report at *6551.

Plaintiff's claim against Chase is premised on RESPA § 8(b), which states:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b).

In a formal policy statement, HUD has interpreted this

section to prohibit "unearned fees" in several situations, including those in which:

> (1) one service provider charges the consumer a fee where no, nominal, or duplicative work is done, or (2) the fee is in excess of the reasonable value of goods or facilities provided or the services actually performed.

Statement of Policy 2001-1, 66 Fed. Reg. 53052, 53059 (Oct 18, 2001) (codified at 24 C.F.R. § 3500.14(c)) (numbers added) ("2001 HUD Policy Statement"). In *Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49, 57 (2d Cir. 2004), the Second Circuit invalidated the second part of this interpretation, holding that it was contrary to the plain meaning of the statute. *Id.* at 56. In *Cohen I*, the Second Circuit interpreted RESPA § 8(b) in light of Congress's statement that RESPA's "overall goal [is] to protect consumers from 'abusive practices' that result in 'unnecessarily high settlement charges.'" 498 F.3d at 122, quoting 12 U.S.C. § 2601(a). The Court accorded *Chevron* deference to the first part of HUD's interpretation (quoted above), finding that HUD reasonably construes RESPA § 8(b) to prohibit a *sole* settlement service provider from charging the consumer a fee when "no... work is done," rejecting the argument that § 8(b) only prohibits divided fees. *Id.* at 126.

*2. Overview of the Arguments*

In her complaint, plaintiff alleges that because Chase

provided no settlement services to the consumer that would entitle Chase to collect the post-closing fee, the post-closing fee was an unearned fee that was prohibited by RESPA. First Am. Compl. ¶ 27, 29. She presents three arguments to support this claim, which I discuss in order below. First, plaintiff argues that there were no services provided "in exchange for" the post-closing fee, i.e., in a *quid pro quo* transaction. Defendant contends that the proper inquiry is whether there were any services performed that would "justify" the fee. Second, plaintiff argues that if there were any services performed for the fee, they were duplicative of services already performed by other agents in the transaction. Third, plaintiff contends that even if there were services performed post closing, the services provided were not settlement services.

*3. Whether the fee was 'for' services under RESPA*

Plaintiff argues that there are issues of fact as to whether defendant performed any compensable services "in exchange for" the post-closing fee. Plaintiff's Memorandum in Opposition to Defendant's Motion at 8 and 27 ("P. Opp."). Plaintiff argues that in order to show that the fee was provided "in exchange for" services, defendant must show some "nexus" between the fee charged and services provided. *Id*. at 18. Defendant challenges plaintiff's reading of the law, describing it as plaintiff's "direct tie test," and stating that it does not reflect the

correct legal standard.  Argument on Summary Judgment Motion at
p. 5:18-24 ("SJ Argument").  Rejecting the 'exchange for'
analysis, defendant contends that the only pertinent question is
whether Chase earned the post-closing fee by performing any post-
closing services "in support of" or 'justifying' the fee,
regardless of the purpose of the charge.  Defendant's Reply in
Support at 2 ("D. Reply").

Defendant seeks support for its contention from a series of
cases dealing with payments by lenders to mortgage brokers.  *See*
*Culpepper v. Irwin Mortgage Corp.*, 491 F.3d 1260 (11th Cir.
2007); *Heimmerman v. First Union Mortgage Corp.*, 305 F.3d 1257
(11th Cir. 2002); *Bjustrom v. Trust One Mortg. Corp.*, 322 F.3d
1201 (9th Cir. 2002); *Glover v. Std. Fed. Bank*, 283 F.3d 953 (8th
Cir. 2002).  These cases hold that defendant lender need not show
a direct tie between a Yield Spread Premium ("YSP") fee payment
by the borrower to the lender (then passed on to the broker) and
the services provided by the broker in order to justify the fee.
The YSP amount reflects the difference between the interest rate
at which the lender is willing to lend the money (the par rate)
and the higher rate at which a broker brings the borrower to the
lender (above par).  *See Culpepper*, 491 F.3d at 1263-64.  In
*Culpepper*, the Eleventh Circuit rejected a challenge by a
borrower to the YSP method of paying brokers.  The plaintiffs in
that case argued that defendants had to show a direct

relationship between the fee paid and specific services provided;
otherwise, the fee would be an illegal referral fee. *Id.* at
1271. The Court declined to accept that argument, following the
2001 HUD policy statement cited above, which formulated a two
step test for evaluating the compensation paid to mortgage
brokers: first, the court must assess whether compensable
services were performed, and second, the court must assess
whether the total compensation (including YSP and other payments)
was reasonable in light of the total services provided. *Id.* at
1273. Whether or not the parties intended that the YSP cover the
services provided was not material to that inquiry. *Id.* at 1268.

The YSP line of cases is inapposite here. The YSP is a
payment to the broker in compensation for all work performed by
the broker. It is not limited to particular services rendered.[3]
This case concerns a fee paid directly to the lender that refers
to a particular set of tasks (so called 'post-closing services'),
rather than referring to loan-related services generally. The
post-closing fee purports to compensate Chase for settlement
activities. Given that it is so described, it is appropriate to
require some showing that the fee is connected to the particular
part of the loan process described as 'settlement.'

---

[3]Moreover, HUD's YSP analysis was explicitly limited to the YSP context. 66 Fed. Reg. at 53053 ("the coverage of this statement is restricted to payments to mortgage brokers.").

In support of her argument that defendant must show some connection between the fee and the service, plaintiff cites a district court opinion in *Busby v. JRHBW Realty, Inc.*, Civil Action No. 2:04CV2799-VEH (N.D. Ala. Oct. 7, 2005), which denied a motion to dismiss in a case where a bank charged a fee for which customers received no services in exchange. Defendant argues that *Busby* does not support the proposition that a link must be shown between a service and a fee, since the bank agents in that case admitted that no services were provided in exchange for the fee. D. Reply at 6. However, bank agents in *Busby* stated that they provided many services, but then acknowledged that the fee was not linked any of them. If defendant's argument were applied in *Busby*, then the fact that any services had been provided would be enough to justify the fee, whether or not customers received the services in exchange for the fee. The Eleventh Circuit later indicated that the 'in exchange for' standard is proper in its opinion overturning the District Court's denial of plaintiff's motion to certify a class. Busby v. JRHBW Realty, Inc., 513 F.3d 1314, 1323 (11th Cir. 2008).

Second Circuit opinions and the text of RESPA support plaintiff's interpretation. In *Cohen I*, the Second Circuit stated that RESPA prohibits "'one service provider' from charging the consumer a fee *for which* 'no... work is done.'" 498 F.3d at 126 (emphasis added). In *Kruse*, the Second Circuit stated that

RESPA does not authorize courts to determine whether a charge is 'reasonable' as interpreted by HUD, because "[w]hatever its size, such a fee is '*for*' the services rendered by the institution and received by the borrower." 383 F.3d at 56 (emphasis added).

Defendant's reading is closer to HUD's construction of § 8(b), since it relies on HUD's finding that in the mortgage broker compensation context, a fee will be permitted if the total compensation received by the broker is supported by the total amount of services performed. *Id.* at 53054. This interpretation enables a lender to make an after-the-fact justification of the fee. However, while *Cohen I* and *Kruse* adopted some of HUD's reasoning, they did not adopt all of it; the Court in each case conducted a *Chevron* analysis to determine whether the agency's interpretation should be accorded deference. From this analysis, the Court determined that the statute required that the relationship between the fee and services be more than coincidental. The fee must be "for" the services.

Defendant next argues that even if it must show that the fee is 'for' the services, there is no genuine issue of fact as to whether a service was provided in exchange for the fee. D. Reply at 11. Defendant asserts that plaintiff has the burden to show that Chase charged the post-closing fee for something other than post-closing services. In support, defendant cites *Celotex Corp. v. Catrett*, 477 U.S. 31; 106 S. Ct. 2548; 91 L. Ed. 2d 265

(1986), which held that "the plain language of Rule 56(c)
mandates the entry of summary judgment... against a party who
fails to make a showing sufficient to establish the existence of
an element essential to that party's case, and on which that
party will bear the burden of proof at trial." *Id.* at 322.
Defendant contends that demonstrating that Chase charged the
post-closing fee for something other than post-closing services
is an essential element of plaintiff's case.  However, this
misstates the burden, since plaintiff need not determine the true
purpose of the fee.  Instead, under the statute, plaintiff need
only show that no valid settlement services were provided in
exchange for the fee.  Plaintiff has claimed in her brief that
the fee was a "rogue fee devised by executives in New York branch
offices to generate profit."  P. Opp at 23.  If this were the
extent of her proof, then her position would fail due to its
conclusory nature, or, in the language of hoary Rule 56 law, its
raising at most "a metaphysical doubt."  "Although all inferences
must be drawn in favor of the nonmoving party, mere speculation
and conjecture is insufficient to preclude the granting of the
motion." *Harlen Assocs. v. Village of Mineola*, 273 F.3d 494, 499
(2d Cir. 2001).

However, contrary to defendant's contention, plaintiff has
provided a number of pieces of evidence in support of her
conclusion that the fee was not for post-closing services to

plaintiff. Plaintiff's contention that the fee did not cover post-closing services is based, *inter alia*, on the inability of witnesses to remember why the fee was instituted, the lack of internal documentation linking the fee to any services, the fact that national post-closing documents do not authorize the fee, the fact that the fee was charged only to New York and Connecticut customers, the fact that post-closing review is performed on all files regardless of whether the post-closing fee is charged, the fact that few Chase witnesses knew anything about the fee, and the fact that post-closing charges were assessed for services that have no purpose under the laws of New York and Connecticut, the only states where the fee was routinely charged. P. Opp. at 13-23. Based on these facts, a jury could reasonably infer that the fee was not paid in exchange for settlement services actually received.

Plaintiff argues that the fact that some customers and not others were charged, while all received the same post-closing review, meant that borrowers in New York were being charged for something that had already been paid for. P. Opp. at 22. The fact that borrowers who pay the post-closing fee apparently receive no additional services in comparison to borrowers who do not pay the fee suggests that the fee is not in fact "for" the service. To explain this oddity, defendant points to the regional fee determination structure that was in place during the

time when the post closing-fee was instituted, explaining that
the various offices had discretion to institute or not institute
fees in their areas.  D. Reply at 15, Ward Decl. ¶ 3.  However,
the fact remains that the fee was only charged in New York and
Connecticut, whereas the Northeast division also included
Pennsylvania and New Jersey.  Steinfeld Dep. at 21, 22, Anderson
Decl., Ex. D.  An inference could be drawn from the uneven
application of the fee that it was being charged not for
settlement services, but instead due to the larger pockets of New
York borrowers, or the exceptional effort of New York bankers to
maximize profits.[4]

The deposition testimony quoted by defendant to support its
argument fails to establish that the post-closing fee was charged
'for' the post-closing review.  Defendant quotes five employees
who testified in depositions that the post-closing fee was "to
cover Chase's post-closing services."   D. Reply at 4, note 1.

---

[4] Several times throughout her brief, including in reference to the
uneven application of fee charges around the country, plaintiff cites the
opinion of plaintiff's expert, Laura Borrelli, who has reviewed the materials
in this case and has written a report summarizing her findings with regards to
the post-closing fee.  P. Opp. at 3, 9, 21, 23, 25, 32, 33.  At times,
plaintiff relies on Ms. Borrelli for facts, and at other times plaintiff cites
Ms. Borelli's opinions, such as her conclusion that the post-closing fee was
implemented solely to enhance profits in certain branch offices and was in
fact a "junk fee."  Report of Laura Borelli, Anderson Decl. Ex. C.  The
opinions of an expert witness may not be considered on summary judgment if
they are inadmissible.  *Raskin v. Wyatt Co.,* 125 F.3d 55, 66-67 & n.5 (2d.
Cir. 1997).  In addition, an expert's conclusory assertions based on
undisputed facts and not based on any technical expertise that is necessary to
resolve a highly complex factual issue are insufficient to create a dispute of
material fact sufficient to withstand summary judgment.  *Kelsey v. City of New
York,* 2007 U.S. Dist. LEXIS 33465 at *17-*20 (E.D.N.Y. May 7, 2007).  Because
I find that plaintiff has stated facts sufficient to create a dispute of
material fact independent of Ms. Borelli's report, it is not necessary to
determine the admissibility of Ms. Borelli's opinions at this juncture.

However, two of these witnesses stated that they had drawn the connection between the post-closing fee and post-closing services based on the name alone. Dep. of James McCoullough at 31 ("Q. And how do you know [the post-closing fee is for post-closing services]?... A. It's been my experience at Chase that the fee name was depictive of its description."); Dep. of Kathie Ward at 19-20 ("Well, it's named post closing review fee, and it's a post closing activity. I would draw some conclusion."). Another witness gave a conclusory answer. Dep. of Sophia Siopis at 36 ("Q. How do you know what the post-closing fee is for... A. I know that... I know what we do, what we conduct. So, 'post-closing fee' is for post-closing the loan.") The quotation from another witness was taken out of context; rather than stating that the fee was for post-closing services, the witness simply acknowledged that the claimed services must have taken place after the loan had closed. Dep. of Anita Lerch 35-37. Only one witness, a former regional director of Chase, stated straightforwardly that "[t]he fee was charged for services – the fee was charged for work done after a loan closed." Dep. of Ellen Steinfeld at 11. This witness was the one who explained that Chase used to charge one up-front fee, but in the early 1980's a decision was taken to split that fee up into smaller fees that would be assessed throughout the loan application process; one of these smaller fees was the post-closing fee. *Id*.

at 38-39.  However, this witness could not say whether the amount
of the up front fee was reduced in any way after the post-closing
fee was instituted.  *Id.*  A finding that Chase did not reduce the
up front fee would undercut the explanation that the purpose of
the fee was to cover post-closing review, and might lead a
reasonable jury to disbelieve Chase's account of the fee.  In
addition, the lack of supporting documents to corroborate the
statements of Chase employees would establish a basis for a
reasonable jury to determine that the fee was not in fact 'for'
compensable settlement services.

Defendant protested at oral argument that there will be a
"flood of litigation" regarding the numerous varieties of bank
fees if banks are required to show some link between the fee and
the services.  SJ Argument at 6:18.  However, it would appear to
be a rare case in which a person receives the same services
whether she pays a fee or not.  That would not be the case with
an application fee or the underwriting fee, both cited by the
defendant as fees that might be excessively questioned under what
it calls the direct tie test.

A rational jury could find that the fee was not in fact
charged 'for' services, but that instead it was an overhead
charge, or another form of fee unconnected to compensable
settlement services. Defendant fails to meet the standard for
summary judgment on this claim.

## 4. Duplicative Services

As an alternative to her theory that defendant provided no settlement services 'in exchange for' the post-closing fee, plaintiff argues that any services that were provided for the fee were duplicative, because the services provided by the post-closer (including checking the accuracy of documents and organizing the file) were already performed by the Chase closing attorney, who was paid a separate fee, or were covered by the loan origination fee.  P. Opp. at 28, 32.  Defendant responds that post-closers conduct a number of services in addition to their review of closing documents, any one of which could justify the post-closing fee.  D. Reply at  19.  In addition, post-closers identify mistakes made by closing attorneys, so that even if they are looking at the same documents, the work is not duplicative.  D. Reply at 21.  Defendant points to a handbook created by federal banking regulators, who recommend[5] that banks

---

[5]At numerous points throughout its papers and at oral argument, defendant has asserted that "banking regulators *require* that lenders such as Chase have post-closing processes in place." D. Mem. at 5, 6, 16,  D. Reply at 2, 21, 22, Ward Decl. at 5.  In support of this assertion, defendant cites a handbook prepared by the Office of the Comptroller of the Currency ("OCC"), which states that "[t]he closing unit should perform a post-closing review of each loan file after closing."  OCC, *Mortgage Banking: Comptroller's Handbook* 11 (Mar. 1998) ("Comptroller's Handbook"), available at http://occ.gov/handbook/mortgage.pdf., quoted in D. Mem. in Supp. at 5. Defendant has mischaracterized the handbook's statements.  As is clear from the quoted text, the handbook indicates that lenders "should" perform various tasks.  This is not a requirement.  The handbook does use the word "must" numerous times throughout its text.  *See*, *e.g.*, Comptroller's Handbook at 4 ("As the escrow account administrator, the service must protect borrowers' funds and make timely payments on their behalf.") When the handbook seeks to use an imperative, it knows how to do so.  In the case of post-closing services, the handbook makes a suggestion rather than a requirement. Defendant's repeated insistence that post-closing services are "required," when the evidence indicates otherwise, does nothing to further its claim that

conduct post-closing review of documents to ensure that
settlement agents properly close loans in accordance with closing
instructions. *See* Comptroller of the Currency, *Mortgage Banking:
Comptroller's Handbook* 11 (March 1998). According to defendant,
this recommendation indicates that the services are necessary and
therefore not duplicative.

Regulation X states that "[a] charge by a person for which
no or nominal services are performed or for which duplicative
fees are charged is an unearned fee and violates this section."
24 C.F.R. 3500.14(c). In its 2001 policy statement, HUD states
that § 8(b) prohibits unearned fees where "one service provider
charges the consumer a fee where no, nominal, or duplicative work
is done." 66 Fed. Reg. at 53057. Whereas the regulation focuses
on a duplicative *fee*, the policy statement indicates that charges
may not be made for duplicative *work*. HUD does not make clear
whether it intends for both forms of duplication to be
impermissible. HUD states that where work is duplicative, "no
work is done" and therefore the fee violates § 8(b). *Id.*

No caselaw analyzes the question of whether HUD's
prohibition on charging a fee for duplicative work is due *Chevron*
deference. In *Cohen I*, the Second Circuit adopted only part of
the HUD statement interpreting § 8(b), holding that HUD
reasonably construes the section "to prohibit "charging the

---

it is permitted to charge a fee for such services.

consumer a fee for which 'no ... work is done.'" 498 F.3d at 126
(ellipsis in original, quoting HUD policy statement).  The Court
made no statement regarding the proper outcome when nominal or
duplicative work has been performed.

However, HUD's interpretation that duplicative fees (where
someone is charged twice for the same work) are prohibited
appears to be foreclosed by *Kruse*.  In *Kruse*, the Second Circuit
declined to follow HUD's interpretation of 8(b) to the extent
that it required the Court to determine whether the fee charged
to the borrower was 'reasonable' in light of the services
provided, stating that "section 8(b) clearly and unambiguously
does not extend to overcharges."  383 F.3d at 56.  A second fee
charged for the same piece of work is an overcharge.  *See Edwards
v. Accredited Home Lenders, Inc*., 2008 U.S. Dist. LEXIS 57757 *33
(S.D. Ala. 2008).  However, plaintiff does not claim that two
fees were charged for the same piece of work, but rather that two
fees were charged for two pieces of work that were duplicative.
This does not fall into the 'overcharge' category.

In one case addressing the issue of duplicative work, a
district court determined that there were issues of material fact
where a lender hired an appraisal management company that in turn
hired an appraiser and charged fees for both the appraisal and
the management of the appraisal, and the plaintiff claimed that
these two pieces of work were duplicative (the appraisal

management company claimed that it performed many additional services for the plaintiff, including making sure the appraisal was complete and managing the paperwork.) *Szczubelek v. Cendant Mortg. Corp.*, 215 F.R.D. 107, 124 (D.N.J. 2002). If HUD's interpretation is correct, then there would similarly be an issue of material fact on the duplicative claim in this case. However, the *Szczubelek* Court did not perform a *Chevron* analysis to determine that this interpretation of § 8(b) is reasonable and therefore should be accorded deference. Such an analysis is required here.

When a statute administered by a federal agency is unclear and the agency is authorized to interpret it, the agency's reasonable interpretation is binding. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837; 842-44, 81 L. Ed. 2d 694; 104 S. Ct. 2778 (1984). The first step in this analysis is to determine whether the language enacted by Congress is clear. If so, the inquiry is at an end. *Id*. at 842-43. Ambiguity is, however, a product of context, and a court should therefore "not confine itself to examining a particular statutory provision in isolation." *Food and Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132-33, 120 S. Ct. 1291; 146 L. Ed. 2d 121 (2000). Rather, determining whether a statute is ambiguous for *Chevron* purposes requires considering the statute as a whole. *Id.* If the text of the statute is

ambiguous, the court must next apply canons of statutory construction and to investigate the legislative history. *Cohen I*, 493 F.3d at 116. If it is not clear that Congress has directly addressed the question at issue, then comes step two, at which a court accords deference to the agency's interpretation of the statute if it finds it to be reasonable. *Chevron*, 467 U.S. at 843-44; accord *Kruse*, 383 F.3d at 55.

The statutory language is clear in this case. Section 8(c) of RESPA states that "[n]othing in this section shall be construed as prohibiting... payment for goods or facilities actually furnished or for services actually performed." The statute clearly states that if a service is actually performed, then RESPA does not prohibit the fee. The text of § 8(b) cannot bear an interpretation that fees for duplicative work are impermissible. If settlement services are actually performed, then RESPA permits charging a fee, even if those services are performed twice and billed twice. Plaintiff's argument that the fee is duplicative fails.

*5. The post-closing fee as an illegal markup*

Plaintiff claims that Chase has illegally marked up a fee to a company used by Chase to ship the loan file to NPC. P. Opp. at 34-36. Plaintiff cites defendant's response to an interrogatory, in which defendant stated, among other things, that the post-

closing fee was for shipping the loan to NPC.[6] P. Opp. at 34,
Anderson Decl. Ex H Interrogatory number 14. Plaintiff argues
that the $225 fee constitutes an illegal mark up of the real cost
to ship the file. "A settlement service provider 'marks up' the
fee for a settlement service when the provider outsources the
task of providing the service to a third-party vendor, pays the
vendor a fee for the service, and then, without providing an
additional service, charges homeowners seeking mortgages a higher
fee for the settlement service than that which the provider paid
to the third-party vendor." *Kruse*, 383 F.3d at 53. In *Kruse*,
the Second Circuit accorded deference to HUD's determination that
§ 8(b) prohibits markups. *Id*. at 61-62. Central to the
definition of a markup is the requirement that the charger of the
fee not provide any additional service. *Id.* Chase claims that
it arranges and manages the shipment of loan files, in addition
to non-shipping related post-closing services.[7] If Chase in fact
did perform such services, and if they are deemed to be
"settlement services," then the fee would not be a markup, but

---

[6]The full text of the interrogatory is as follows:
Q: Please set forth the services performed by Defendant in exchange for
its receipt of a post closing fee.
A: Following closing, Chase performs a variety of services, including a
review of documents, including the Deed of Trust, the Deed if applicable, the
title insurance binder and other documents to audit them; making sure the
documents are present, properly executed and dated and that the notary has
properly signed and sealed documents where necessary; and correcting documents
where required. Chase also incurs shipping costs to send the loan file to its
records center.

[7]*See* previous note.

rather an overcharge. *Id.* at 62. *See also Sosa v. Chase Manhattan Mortgage Corp.*, 348 F.3d 979 (11th Cir. 2003) (holding that because defendant arranged to have items delivered to complete the closing and thereby benefitted the borrowers by arranging for third party contractors to perform the deliveries, the added charge on top of the third party vendor's fee was not a markup). Thus, the question of whether there was a markup is contingent on the question of whether post-closing review as a whole includes compensable settlement services. If it does, then the fee is not an illegal markup.

*6. Invalid settlement service*

Plaintiff asserts in her complaint that the post-closing fee did not compensate Chase for a "valid settlement service." First Am. Compl. ¶ 2. Defendant seizes on this statement and argues that because § 8(b) applies only to settlement-service fees, if the fee in this case is not for a settlement service, then plaintiff has no claim under RESPA. Plaintiff does not take up this issue in her Memorandum of Law in Opposition to defendant's motion. Nevertheless, defendant's argument is without merit.

Defendant argues that because § 8(b) only applies to settlement-service fees, plaintiff's claim that post-closing services are not valid settlement services undermines her § 8(b) claim. Defendant's Memorandum of Law in Support of Defendant's Motion at 12 ("D. Mem."). This is not a correct reading of the

statute.  Section 8(b)'s prohibition on unearned fees applies to those "charge[s] made or received for the rendering of a real estate service."  12 U.S.C. § 2607(b).  The relevant question is whether a settlement service fee was charged, not whether the activity for which the fee was allegedly charged was in fact a settlement service.  "In order to state a claim under RESPA, plaintiffs must establish that the... [fees] at issue constitute charges rendered at *or* in relation to settlement." *Bloom v. Martin*, 865 F. Supp. 1377, 1381-82 (N.D.Ca. 1994) (emphasis added).  A finding that the services that were allegedly provided in exchange for the settlement-service fee were not in fact "settlement services" does not render § 8(b) inapplicable.  The fact that a settlement fee was charged is enough to invoke RESPA.  Additionally, if defendant's reading were correct, then a lender could charge settlement fees for non-settlement services with impunity, claiming that because the thing for which the fee was charged was not a settlement service, RESPA did not apply.  This contravenes the purpose of the statute, which is to protect borrowers from paying settlement fees when no settlement services are provided.  *See* Senate Report at *6547.

In support of its position, defendant cites *In re Merscorp, Inc., RESPA Litigation* ("*In re Merscorp*"), MDL No. 1810, 2008 U.S. Dist. LEXIS 40473 (S.D. Tex. May 16, 2008), in which the Court said that in order to state a claim under RESPA, plaintiffs

"must establish that the service provided... constitutes a 'settlement service.'" *Id.* at *31. This reading of the statute runs contrary to the text, which applies RESPA when a settlement service fee is charged.[8] The plaintiff's § 8(b) claim in that case depended on the ability to make a showing that there was no service provided. *Id.* at 41 ("Section 8(b)... prohibits payments for [settlement] services that were not actually performed.") If the plaintiff were required under RESPA to establish that a settlement service was in fact provided, then it would be impossible to make out a claim that no settlement service were provided.

The question remains whether Chase's post-closing review constitutes a settlement service under RESPA. This inquiry must first determine whether the statute does require that settlement services be performed in exchange for settlement service fees. Then it must be determined whether the services that were provided fit the definition of settlement services. If

_____

[8] To support this construction, the Court cited three District Court opinions. *See Wooten v. Quicken Loans, Inc.*, C.A. No. 07-00478-CG-C, 2008 U.S. Dist. LEXIS 20252 (S.D. Ala. Mar. 10, 2008); *Thomas v. Ocwen Fed. Bank FSB*, 01-C-4249, 2002 U.S. Dist. LEXIS 1231 (N.D. Ill. Jan 23, 2002); *Bloom v. Martin*, 865 F. Supp. 1377 (N.D. Cal. 1994). However, none of the cases cited support the conclusion of the *In re Merscorp* court. In *Wooten*, the court stated that § 8(b) "only applies to *charges* for the rendering of a real estate settlement service" 2008 U.S. Dist. LEXIS 20252 at *12 (emphasis added). In *Thomas*, the court stated that "[section 8] of RESPA... does not apply to charges incurred after closing and unrelated to settlement service." 2002 U.S. Dist. LEXIS 1231 at *13. In *Bloom*, the court found that two fees incurred and charged after settlement were not settlement charges and did not need to be disclosed in the HUD-1 settlement statement under RESPA. 865 F. Supp. at 1381-83. None of these cases supports the contention that RESPA does not apply to charges incurred at settlement for which no settlement service was provided.

defendant's post-closing review is not a compensable settlement service under RESPA, then Chase has charged an unearned fee even though work may have actually been performed.

*(a) Section 8(b) requires that settlement services be performed*

Section 8(b) prohibits the charging of a settlement service fee "other than for services actually performed."  At issue is the meaning of the term "services."  The term on its face applies to any and all services.  However, the term must be interpreted in context.  "Statutory construction . . . is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988) (quoted in *ACLU v. DOD*, 2008 U.S. App. LEXIS 20074 *26 (2d  Cir. 2008).  Such clarification occurs when "only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *Id*.  The use of the word 'services' in the context of the text makes clear that the only services referred to here are *settlement* services.  If the word 'services' were read to include all services, a settlement service provider would need only to provide a service - of any kind - in order to justify its charging of a fee for settlement service.  Congress could not have intended this result.

HUD has, moreover, interpreted the statue to require that

the services performed be settlement services. In its 2001
Policy Statement, HUD interpreted Section 8(b) to prohibit
payments that are unearned fees for settlement services, which
can occur in cases where "one settlement service provider charges
the consumer a fee where no, nominal, or duplicative work is
done, or the fee is in excess of the reasonable value of... the
services actually performed." 66 Fed. Reg. at 53057. Following
this interpretation, HUD makes clear that the "services actually
performed" must be *settlement* services. In its Settlement Costs
Booklet for consumers, quoted in the Policy Statement, HUD states
that "[i]t is also illegal for anyone to accept a fee or part of
a fee for services if that person has not actually performed
settlement services for the fee." 62 Fed. Reg. 31982, 31998
(June 11, 1997), quoted in 66 Fed. Reg. at 53058.

Section 8(b) thus requires that no fee may be charged for
the rendering of a real estate settlement service other than for
settlement services actually performed.

*(b) Whether Chase's post-closing services are settlement services*

RESPA Section 3 defines the term "settlement services" to
include:

> any service provided in connection with a real estate
> settlement including, but not limited to, the following:
> title searches, title examinations, the provision of title
> certificates, title insurance, services rendered by an

> attorney, the preparation of documents, property surveys,
> the rendering of credit reports or appraisals, pest and
> fungus inspections, services rendered by a real estate agent
> or broker, the origination of a federally related mortgage
> loan (including, but not limited to, the taking of loan
> applications, loan processing, and the underwriting and
> funding of loans), and the handling of the processing, and
> closing of settlement.

12 U.S.C. § 1202(3). In Regulation X, HUD's implementing regulation for RESPA, HUD has defined the term "settlement" in the following manner:

> Settlement means the process of executing legally binding
> documents regarding a lien on property that is subject to a
> federally related mortgage loan. This process may also be
> called "closing" or "escrow" in different jurisdictions.

24 CFR 3500.2. Similarly, Black's law dictionary defines a "closing," also known as "settlement," as

> the final meeting between the parties to a transaction, at
> which the transaction is consummated; esp., in real estate,
> the final transaction between the buyer and seller, whereby
> the conveyancing documents are concluded and the money and
> property transferred.

Black's Law Dictionary (8th ed. 2004).

*1. Temporal Analysis*

Post-closing services do not fit within the definition of settlement services under the preceding definitions of settlement.[9] They are not akin to any of the particular services listed in the statute, nor do they fall within the catch-all phrase including "handling of the processing and closing of settlement." As the definitions of 'settlement' make clear, the closing of settlement is complete at the time when the property is transferred. Post-closing review takes place after this time. Under a temporal analysis, in which the status of a service as a settlement service is determined by its timing relative to settlement, post-closing review is not a settlement service. *See McAnaney v. Astoria Fin. Corp.*, 357 F. Supp. 2d 578, 589-90 (E.D.N.Y. 2005) (applying "temporal analysis" to determine what constitutes a settlement service under RESPA).[10]

---

[9]Regulation X expands on the definition of 'settlement service' provided in the statute, and defines the term "settlement service" as follows:
   Settlement service means any service provided in connection with a prospective or actual settlement, including, but not limited to, any one or more of the following...
*Id.* The regulation goes on to list fifteen services in connection with a settlement, fourteen of which refer to specific services performed in the creation of a loan. Number fifteen is a catch-all phrase: "[p]rovision of any other services for which a settlement service provider requires a borrower or seller to pay." *Id.* Taken on its face, this definition is circular; a settlement service is said to be that for which a settlement service provider requires a borrower to pay. This does not aid in the determination of whether the post-closing review provided by Chase constitutes a 'settlement service' that is compensable under RESPA. Such a broad definition of what constitutes a settlement service is not consistent with the text of the statute, the goal of which is to address "unnecessarily high settlement charges." 12 U.S.C. § 2601.

[10] Courts have found that suits challenging fees for services that were provided post-settlement fail to state a claim under RESPA. *See Bloom v. Martin*, 865 F.Supp. 1377 (N.D.Ca. 1994) (plaintiff failed to state a claim under RESPA when challenging demand and reconveyance fees, since the fees were paid and the services provided after closing); McAnaney v. Astoria Fin. Corp.,

To support its claim that 'post-closing services' are compensable under RESPA, defendant argues that the fact that these activities take place after the closing is not a bar to charging a settlement fee for them.  Defendant points to Regulation X and HUD's sample forms, which state that lenders may charge borrowers at closing for premiums covering various forms of insurance to be provided after closing.  D. Mem. at 14.  In particular, defendant cites HUD's explanation of settlement costs listed in Section 900 of the HUD-1 disclosure form.  The explanation states: "[y]ou may be required to prepay certain items at the time of settlement, such as accrued interest, mortgage insurance premiums, and hazard insurance premiums." HUD, *Your Settlement Costs, available at*

http://www.hud.gov/offices/adm/hudclips/forms/files/1.pdf, Levine Decl. Ex. 5.  However, defendant did not include the post-closing fee in Section 900 of the HUD-1 settlement form provided for insurance premiums and other "Items Required By Lender to be Paid in Advance."  Plaintiff's Ex. 2.  Instead, the post-closing fee

---

357 F. Supp. 2d 578 (E.D.N.Y. 2005) (services provided when a loan is discharged, satisfied, or recorded do not fall within the ambit of RESPA, since they are charged and take place after settlement); *Molosky v. Wash. Mut. Bank*, 2008 U.S. Dist. LEXIS 3896 at *15 (E.D. Mich. Jan. 18, 2008) (plaintiff failed to state a claim under RESPA because the fees at issue were not assessed at or prior to the settlement); *but see MorEquity, Inc. v. Naeem*, 118 F. Supp. 2d 885, 900 (N.D. Ill. 2000) ("RESPA applies not only to the actual settlement process, however, but also to the servicing of federally regulated mortgage loans"), *accord Cortez v. Keystone Bank*, 2000 U.S. Dist. LEXIS 5705, 2000 WL 536666, at *10 (E.D. Pa. 2000).  However, in each of these cases, neither the challenged fee nor the service was provided at or before settlement.  In contrast, here plaintiff paid the post-closing fee at settlement.

is hand written in Section 800, "Items Payable in Connection with Loan." *Id.* HUD explains this section as follows: "[t]hese are the fees that lenders charge to process, approve, and make the mortgage loan." HUD, *Your Settlement Costs*. The post-closing fee was not charged as a 'prepayment' of an item that would be provided to the borrower after settlement, but instead as an item payable in connection with processing, approving, and making of the loan. However, the post-closing review was not done in connection with the making of a loan, but was instead a post-settlement activity. Defendant's comparison of post-closing review to prepaid insurance premiums does not withstand scrutiny.

*2. Benefit Analysis*

In addition to arguing that the post-closing review is not a valid settlement service due to its timing, plaintiff suggests that the review is not a settlement service because it does not "benefit the consumer." P. Opp. at 24. Defendant argues that the fact that the post-closing review does not benefit the borrower "lacks any foundation in RESPA." D. Mem. at 15. Defendant states that nothing in the text of § 8(b) prohibits a lender from charging a borrower for services that benefit only the lender, and furthermore points to clauses in RESPA and in Regulation X that authorize lenders to charge borrowers for services, such as title examination and title insurance, that protect only the lender's interest in the real-estate collateral.

*Id*. At 16.

The suggestion that RESPA is devoid of the idea that settlement services must benefit borrowers is in conflict with the legislative history of the statute, which indicates that Congress was indeed concerned about services benefitting consumers. The Senate Report states that in the case of unearned fees, "the payment or thing of value furnished by the person to whom the settlement business is referred tends to increase the cost of settlement services *without providing any benefits* to the home buyer." Senate Report at *6551 (quoted in *Cohen I*, 498 F.3d at 123) (emphasis added). Although the statute does not state that a service must be directly beneficial to the borrower in order to be compensable, the issue of benefits was clearly of concern to the Senate. In addition, leading cases addressing RESPA have evaluated the fees at least in part based on the benefits conferred to borrowers. *See Sosa*, 348 F.3d at 981 and 984 (explaining that the statute prohibits fees that increase settlement costs without providing benefits and finding that defendant's fee did benefit consumers and therefore was permissible); *Culpepper*, 471 F.3d at 1273 (compensation was not unreasonable where a mortgage broker benefitted borrowers in their mortgage transactions; *but see In re Merscorp*, 2008 U.S. Dist. LEXIS 40473 at *40-*41 (finding that because the text of § 8(b) does not require that there be a benefit to the borrower, it

is clear that no benefit is required).

In support of its claim that settlement services need not benefit borrowers, defendant relies on a definition of 'benefit' developed by HUD to support its 'total compensation for total services' approach to Yield Spread Premiums.  In its explanation of its YSP framework in its 1999 Policy Statement, HUD states that "[a]ll services, goods and facilities insure to the benefit of both the borrower and the lender in the sense that they make the loan transaction possible...  The consumer is ultimately purchasing the total loan and is ultimately paying for all the services needed to create the loan."  64 Fed. Reg. at 10086. However, defendant glosses over the word "create."  During the time when the loan transaction is being put together and approved, the question of who benefits from a particular service cannot be determined since all services work together to realize the loan transaction.  However, once the loan is created, that difficulty disappears.  Chase's post-closing review of documents is not part of the loan creation process.  It is a separate process performed to ensure that Chase can enforce the loan or sell it to investors.  Ward Decl. ¶ 11, 14, 15.  The benefits clearly accrue to Chase and not to the individual borrower who is charged the fee.

In further support of its claim, defendant cites *Kruse*, in which the Second Circuit held that RESPA did not prohibit as an

overcharge compensation for the underwriting service analysis of the borrower's ability to repay the loan in order to determine if it would be purchased by Fannie Mae or Freddie Mac on the secondary mortgage market. 383 F.3d at 53. Defendant argues that if RESPA had required that services be for the benefit of the borrower in order to be valid settlement services, the Court would have found the fee to be illegal rather than permitting it. However, the facts of *Kruse* are distinguishable. The underwriting service performed in that case took place prior to closing, and thus was part of the process of making the loan. Applying HUD's benefits analysis, the borrower benefitted from that service. In contrast, because post-closing review does not benefit the borrower in the creation of her particular loan, it is not a settlement service.[11]

*3. Achieving a Working Definition of 'Settlement Service'*

Based on the foregoing, a working definition of what constitutes a 'settlement service' is that which either directly benefits the consumer, or is performed at or before the closing. This accounts for actions taken by the lender before closing that

---

[11]Defendant argues that the salability of loans on the secondary mortgage market is a crucial method of freeing up capital for banks to make additional mortgage offerings to borrowers. Therefore, defendant reasons, post-closing review 'benefits' borrowers. D. Mem. at 17. However, this analysis could just as well encompass any actions taken on behalf of the bank to keep its loan process functioning, such as the purchasing of computers, or the conducting of staff training. These overhead expenditures also 'benefit' borrowers by ensuring that the infrastructure is in place for extending loans. However, this broadly understood benefit does not bear a direct relationship to the loan in the manner required of settlement services.

for the most part benefit the lender, such as underwriting, credit reports, and appraisals, for which RESPA clearly permits fees to be charged.  It also accounts for actions performed after closing that are deemed compensable by HUD, such as in the case of prepaid insurance premiums, which are clearly beneficial to the borrowers who pay for them.  This formulation ensures that the services performed and paid for by individual borrowers are all tied to the creation of an individual loan.

An example of this approach appears in *Friedman v. Market Street Corp.*, 520 F.3d 1289 (11th Cir. 2008) ("*Friedman II*"), which defendant cites for the proposition that fees for services performed after closing are permissible.  In *Friedman*, plaintiffs paid a one time fee of $556.25 in order to have the right to make tax, insurance, and other payments associated with their property directly, rather than having to put money into an escrow account held by the bank.  The Court explained that "[t]he benefit to borrowers who choose a non-escrowed loan is that the borrowers retain control over the monies that would otherwise be paid into escrow until such time as they make the payments directly."  *Id.* at 1291.  While it is not clear that the services provided were in fact compensable settlement services,[12] the Court's specific

---

[12]In *Friedman II*, plaintiffs argued that they were provided no settlement services in exchange for the fee.  In an unpublished opinion, the Eleventh Circuit had upheld the dismissal of the action, stating that "it is clear from the pleadings that some services were contemplated in exchange for the fee, such as monitoring the payment of taxes and insurance." *Friedman v. Market Street Mortgage Corp.*, No. 03-14370, slip op. at 3, 2004 U.S. App.

statement of consumer benefit offers a model of analyzing

instances where settlement fees are charged for services

performed after settlement.

There is no serious dispute that post-closing review was

performed on plaintiff's loan, and that Chase believed that this

review was necessary work ("not sham services" as defense counsel

put it at oral argument).  The question of whether the post-

closing fee was actually compensation for this review is an open

one, as discussed previously.  However, the more pertinent

question is whether, under the statute, Chase can allocate its

overhead costs to a particular mortgage.  That Chase refers to

its post-closing work as "post-closing services" does not

transform this work into a settlement service.  Chase admits that

it charges this fee for work that Chase performs after the

closing to ensure the salability of the loan on the secondary

mortgage market.  Chase argues that services need not be for the

benefit of the borrower nor need they occur before the loan

closing in order to qualify as settlement services.  Chase

further maintains that ensuring the salability of these loans

makes it possible for banks to issue greater numbers of

LEXIS 19678 (11th Cir. 2004) ("*Friedman I*"), cited in *Friedman II*, 520 F.3d at 1292.  *Friedman II* followed the law of the case in dismissing plaintiff's amended complaint that again alleged that no services were provided in exchange for the fee.  Defendant has pointed to this case as an example of services provided after closing that were upheld as compensable, but the case cited offers no discussion of this question and simply refers to an earlier, unpublished opinion.  There is no basis to determine whether the finding that compensable services were performed should serve as precedent.

mortgages, which is a benefit to borrowers.  This is too tenuous a connection.  If this argument were enough to qualify an action as a settlement service, Chase could begin charging its borrowers for overhead costs related to the provision of mortgages, such as the cost of audits, training, and updating management information systems (all of which are recommended for banks by the Comptroller's Handbook, which also recommends performing post-closing review of loans).

For the foregoing reasons, the post-closing review provided by Chase was not a valid settlement service.  Plaintiff paid a settlement service fee for which no compensable settlement services were performed.  Chase's motion for summary judgment is denied on this claim.

## C. Plaintiff's GBL § 349 Claim

*1. GBL § 349*

Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce."  N.Y. Gen. Bus. Law § 349(a).  To establish a claim under § 349, Cohen must demonstrate: 1) the defendant's act was misleading in a material way; 2) the act was directed at consumers; and 3) the plaintiff has been injured as a result.  *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000).  An act is deceptive if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003)

(quoting *Maurizio*, 230 F.3d at 521). The act need not constitute common-law fraud to be actionable. *Id.* Under New York law, a defendant's disclosure of a fee in advance of its payment generally is sufficient to show that the fee was not misleading. *See Zuckerman v. BMG Direct Mktg., Inc.*, 290 A.D.2d 330; 737 N.Y.S.2d 14 (1st Dept. 2002) (holding that shipping and handling fees were not deceptive where amounts disclosed); *Sands v. Ticketmaster-New York, Inc.*, 207 A.D.2d 687; 616 N.Y.S.2d 362 (1st Dept. 1994) (same holding for disclosed ticket service fees); *Lewis v. Hertz Corp.*, 181 A.D.2d 493; 581 N.Y.S.2d 305 (1st Dept. 1992) (same holding for disclosed rental car refueling fees). However, the general rule that consumer fraud claims cannot be predicated on fully disclosed facts does not apply when one party has exploited a disparity of bargaining power. *Negrin v. Norwest Mortgage, Inc.*, 263 A.D.2d 39; 700 N.Y.S.2d 184 (N.Y. App. Div. 1999).

*2. Relationship of § 349 claim to RESPA claim*

In *Cohen I*, the Second Circuit stated that the post-closing fee charged in this case could constitute a deceptive practice even if disclosed. 498 F.3d at 126-27. The Court reasoned that given a consumer's reasonable assumption that all fees charged by a respectable bank are legal, collecting fees in violation of state and federal laws may satisfy the 'misleading' element of § 349. *Id.* The Court stated that it could not dismiss the § 349

claim while plaintiff's RESPA claim was pending.

Because the RESPA claim survives summary judgment, it is now appropriate to determine whether the illegality of a fee does in fact satisfy the 'misleading' element of § 349 even if the fee is properly disclosed.  There is authority under New York law for finding that collecting an illegal fee constitutes a deceptive conduct under § 349.  *See Kidd v. Delta Funding Corp.*, 2000 N.Y. Misc. LEXIS 29, at *26-27 (Sup. Ct., N.Y. County, Feb. 22, 2000) (holding that although defendant disclosed the challenged fee, defendant's imposition of illegal fees constituted deceptive conduct under § 349); *Negrin v. Northwest Mortg., Inc.*, 263 A.D.2d 39, 50; 700 N.Y.S.2d 184 (2d Dept. 1999) (notwithstanding disclosure, allegations of a bank's imposition of illegal and/or unwarranted fees stated a valid claim under § 349); *Dowd v. Alliance Mtge. Co.*, 32 A.D.3d 894, 895; 822 N.Y.S.2d 558 (2d Dept. 2006) (reaffirming *Negrin*); *Bartolomeo v. Runco*, 162 Misc. 2d 485, 490; 616 N.Y.S.2d 695 (Yonkers City Ct. 1994) (representation that a cellar apartment was a legal apartment was deceptive under § 349) (overruled on other grounds by *Corbin v. Briley*, 192 Misc. 2d 503; 747 N.Y.S.2d 134 (2d Dept. 2002)).  If it is found that collection of the post-closing fee was in fact illegal under RESPA, then first element of § 349 is established.

*3. Coercion as an independent ground for the § 349 claim*

In *Cohen I*, the Second Circuit directed this Court to allow

plaintiff to amend her state law claim to include a belated
allegation that payment of the post-closing fee was coerced by
the threat of forfeiting the $425 non-refundable application fee.

Plaintiff now argues that because the non-refundable
application fee of $425 is greater than the post-closing fee of
$225, any reasonable person would choose to pay the post-closing
fee rather than walking away from the loan and losing the $425
application fee, and as such there are grounds for finding
coercion.  P. Opp. at 38.  Defendant points out that because
plaintiff and Mr. Cohen did not notice the post-closing fee until
after the closing, they cannot now claim that they were coerced
into closing the loan and thereby paying the post-closing fee.
Plaintiff responds, citing no authority, that the existence of
coercion in a class action is determined by the reasonable person
standard.  However, this dispute need not be resolved at this
time, because under § 349(d), "it shall be a complete defense
that the act or practice... subject to and complies with the
rules and regulations of, and the statutes administered by, ...
any official department, division, commission or agency of the
United States as such rules, regulations or statutes are
interpreted by... such department, division, commission or agency
or the federal courts." N.Y. GBL § 349(d).  This statute makes
clear that if the post-closing fee is legal under RESPA, which is
administered by HUD, a federal agency, then the § 349 claim is

foreclosed. However, if RESPA was violated in this case, then plaintiff can base her § 349 claim on the illegal fee.

## Conclusion

For the reasons set forth above, defendant's motion for summary judgment is denied. The Clerk is directed to transmit a copy of the within to all parties and the assigned magistrate judge.

SO ORDERED.

Dated : Brooklyn, New York
        January 28, 2009

                              ___

                    <u>Charles P. Sifton /s/ electronically signed</u>
                    By: United States District Judge