UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

SYLVIA C. COHEN, On Behalf of Herself and All   :   04-CV-4098 (CPS/RLM)
Other Persons Similarly Situated,                           :

                                   :

                 Plaintiff,     :

                                   :

   vs.                              :

                                   :

JP MORGAN CHASE & CO. and JP MORGAN    :
CHASE BANK,                              :

                                 :

               Defendants.    :

-------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES

GISKAN SOLOTAROFF ANDERSON & STEWART LLP
Oren Giskan
Catherine E. Anderson
11 Broadway, Suite 2150
New York, NY 10004
(212) 847-8315

*Counsel for Plaintiff*

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.      The Court Should Utilize the Percentage Method in Awarding Attorneys'
        Fees to Class Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.     The *Goldberger* Factors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      The Time and Labor Expended . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                1.      Class Counsel's Lodestar . . . . . . . . . . . . . . . . . . . . . . . . 7

                2.      Class Counsel Litigated This Case For Five Years . . . . 8

        B.      The Magnitude and Complexities of the Litigation . . . . . . . . . . . . . .10

        C.      The Risk of the Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        D.       The Quality of Representation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        E.      The Requested Fee in Relation to the Settlement . . . . . . . . . . . . . . . .14

        F.      Public Policy Considerations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

III.    Other Considerations Support the Fee Requested . . . . . . . . . . . . . . . . . . . . 16

        A.      The Fee Requested Reflects A Reasonable Deal for Class Members .16

        B.      Promotion of Efficiency and the Reward of Results . . . . . . . . . . . . . 17

        CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## <u>TABLE OF AUTHORITIES</u>

### <u>Federal Cases</u>

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

*Busby v. JRHBW Realty, Inc.,*
2009 U.S. Dist. LEXIS 41720 (N.D. Ala. Apr. 20, 2009) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Bushbeck v. Chicago Title Ins. Co.*, 632 F. Supp. 2d 1036 (W.D. Wash. 2008) . . . . . . . 15

*Cent. States Southeast & Southwest Areas Health & Welfare Fund*
  *v. Merck-Medco Managed Care*, L.L.C., 504 F.3d 229 (2d Cir. 2007) . . . . . . . . . . . . . .5

*Cohen v. J.P. Morgan Chase & Co.,* 498 F.3d 11 (2d. Cir. 2007) . . . . . . . . . . . . . . 10, 12

*Cohen v. J.P. Morgan Chase & Co.,* 608 F. Supp. 2d 330 (E.D.N.Y. 2009) . . . .10, 12, 15

*Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974). . . . . . . . . . . . . . . . . . . . . . . . . 11

*Diamond v. Fogelman*, 1992 U.S. Dist. LEXIS 12076 (E.D.N.Y. July 30, 1992) . . . . . . .9

*Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000). . . . . . . . . . . . . . . .*.passim*

*Hicks v. Morgan Stanley and Co.,*
2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. October 24, 2005). . . . . . . . . . . . . . . . . . . . . . 5

*In re Agent Orange Prod. Liab. Litig,* 611 F. Supp. 1296 (E.D.N.Y. 1985) . . . . . . . . . . 4

*In re Am. Bank Note Holographies, Sec. Litig.,*
127 F. Supp. 2d 418 (S.D.N.Y. Jan. 2, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6, 16

*In re Crazy Eddie*, 824 F. Supp. 320 (E.D.N.Y. 1993). . . . . . . . . . . . . . . . . . . . . . . . 5, 12

*In re Dime Sav. Bank*, 1994 U.S. Dist. LEXIS 2527 (E.D.N.Y. Feb. 23, 1994) . . . . . . . . 5

*In re Elan Sec. Litig.*, 385 F. Supp. 2d 363 (S.D.N.Y. 2005)  . . . . . . . . . . . . . . . . . . . . . 3

*In re EVCI Career Colleges Holding Corp. Securities Litig.,*
2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*In re Gilat Satellite Networks, Ltd.,*
2007 U.S. Dist. LEXIS 68964 (E.D.N.Y. Sept. 18, 2007). . . . . . . . . . . . . . . . . . . . .5, 6, 7

*In re Lloyd's American Trust Fund Litig.*,
2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002). . . . . . . . . . . . . . . . . . . . . . . . . .4

*In re Medical X-Ray Film Antitrust Litig.*,
1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998). . . . . . . . . . . . . . . . . . . . .5, 11, 13

*In re Merscorp Inc.*, 2008 U.S. Dist. LEXIS 40473 (S.D. Tex. May 16, 2008) . . . . . . . .15

*In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465 (S.D.N.Y. 1998). . . .5, 14

*In re PaineWebber Sec. Litig.*,
Nos. 86-6776, 89-2838, 1994 U.S. Dist. LEXIS 10873 (S.D.N.Y. Aug. 5, 1994). . . . . . .5

*In re Warner Communications Sec. Litigation*, 618 F. Supp. 735 (S.D.N.Y. 1985) . . . . .7

*Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241 (8th Cir.1996) . . . . . . . . . . . . . 14, 18

*Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*The Stop & Shop Supermarket Company v. Smithkline Beecham Corp.*,
2005 U.S. Dist. LEXIS 9705 (E.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Wal-Mart Stores Inc. v. Visa U.S.A.*, 396 F.3d 96 (2d Cir. 2005). . . . . . . . . . . . . . . .3, 4

*Warren v. Xerox Corp.*, 2008 U.S. Dist. LEXIS 73951 (E.D.N.Y. Sept. 19, 2008) . . . . .5

## **Other**

"Will Settlement Service Providers Be Forced To Work For Their Money" the Validity and Effect of Cohen v. J.P. Morgan Chase & Co.," 498 F.3d 11 (2d. Cir. 2007)," 77 U. Cin. L. Rev. 297 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

SYLVIA C. COHEN, On Behalf of Herself and All  :    04-CV-4098 (CPS/RLM)
Other Persons Similarly Situated,  :

                    Plaintiff,  :

    vs.  :

JP MORGAN CHASE & CO. and JP MORGAN  :
CHASE BANK,  :

                    Defendants.  :

------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES

      Plaintiff submits this memorandum in support of her motion for an award of attorneys' fees and expenses.[1]

## INTRODUCTION

      Plaintiff brought this case in 2004 seeking the return of a Post Closing Fee which Chase charged and collected from Plaintiff and the other members of the Class. After roughly five years of litigation, including a successful appeal to the Second Circuit Court of Appeals and extensive briefing in surviving Chase's motion for summary judgment, Plaintiff has secured a settlement for the Class worth approximately $19.9 million. In addition, Chase has agreed to pay attorneys' fees and expenses awarded by the Court, as well as the costs of notice and settlement administration. Chase had agreed not to appeal any award of attorneys' fees that is below 3.75 times the lodestar submitted by Class Counsel to the Court, and Class Counsel agrees not to

---

[1] Plaintiff will submit a separate memorandum of law in support of final approval of the settlement and an incentive award to the Plaintiff as class representative. Pursuant to the settlement agreement, Class Counsel agreed to file this motion and memorandum 45 days prior to final approval to give Chase sufficient time to respond.

appeal any award of attorneys' fees and expenses above 3.75 times the lodestar submitted by Class Counsel to the Court.

In a settlement environment characterized by so-called "coupon settlements," this settlement is an exception. Indeed, under the terms of this settlement, nearly every member of the Class can receive 100% cash refund of the amount wrongfully collected by Chase, plus interest at 5 percent per year. The only Class members who are not entitled to seek full monetary relief are those who are in default or whose homes were foreclosed upon. Class Counsel does not believe that these Class members represent a significant percentage of the Class. By any measure, this is an outstanding result.

Unfortunately, the parties could not agree on the amount of attorneys' fees to be paid by Chase to Class Counsel and are submitting the question of reasonable attorneys' fees to the Court. Plaintiff seeks attorneys' fees and expenses in the amount of $6.6 million. This amount reflects 25% of the value of the Settlement to the Class. Because attorneys' fees are considered a benefit to the Class, Plaintiff calculates the percentage of attorneys' fees by dividing the amount of the attorneys' fees requested by the total value of the relief to the class ($19.9 million) plus the amount of attorneys' fees ($6.6 million). Although she could, Plaintiff has not included in the total value of the Settlement the costs of notice and the costs of administration, which Chase has agreed to pay separate and apart from the money paid to Class members. Nor has Plaintiff added in to the total value of the Settlement any amount for effectively causing Chase to cease collecting the Post Closing Fee in 2007.

As set forth below, Plaintiff respectfully submits that the amount of attorneys' fees should be calculated here using the percentage method favored in the Second Circuit, and that a

25% fee is well within the range of reasonableness.  Moreover, even if the Court were to apply the lodestar methodology, the amount sought by Class Counsel is warranted, given the outstanding result in this case.

Class Counsel's lodestar through November 4, 2009, is $932,586.[2]  Class Counsel's  time and expense records are attached as Exhibit 1 to the Declaration of Oren Giskan in Support of this Motion for an Award of Attorneys' Fees dated November 9, 2009 ("Giskan Declaration" or "Giskan Dec."), submitted herewith.  Given that Class Counsel has already received in excess of five hundred calls from Class members concerning the settlement, we anticipate spending significant additional time on this case assisting Class members with the claims process and preparing our filings in support of final approval.  *See* Giskan Declaration at ¶ 21.

## ARGUMENT

**I.**      **The Court Should Utilize the Percentage Method in Awarding Attorneys' Fees to Class Counsel**

It is well established that when a representative party has conferred a "substantial benefit" upon an identifiable class, counsel for that party is entitled to a corresponding fee award.  *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *Wal-Mart Stores Inc. v. Visa U.S.A.,* 396 F.3d 96, 122 (2d Cir. 2005).

The Second Circuit favors awarding fees as a percentage of the total settlement value in class actions, rather than using the lodestar method, to arrive at a reasonable fee.  *Wal-Mart*, 396 F.3d at 121; *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 373 (S.D.N.Y. 2005).  As Judge Sweet

---

[2] Class Counsel's lodestar includes time spent on this fee petition.  If the Court wishes, Class Counsel can break out that time from its total lodestar.  While Plaintiff recognizes that not all Courts count time spent on a fee petition in awarding fees, Plaintiff believes it is especially appropriate here where Chase is contesting the fee and the parties here agreed to full briefing on the issue to the Court.  Chase is undoubtedly paying its lawyers to oppose this fee petition.  Class Counsel should also be paid for this time.

held in *In re Lloyd's American Trust Fund Litig.*, 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002), in which he awarded class counsel 28% of the settlement fund using the percentage method:

> The percentage method directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation, which clearly benefits both litigants and the judicial system. The percentage approach is also the most efficient means of rewarding the work of class action attorneys, and avoids the wasteful and burdensome process – to both counsel and the courts – of preparing and evaluating fee petitions, which the Third Circuit Task Force described as 'cumbersome, enervating, and often surrealistic.'

*Id.*, at \*25.

The percentage method is the most efficient means of compensating the work of class action attorneys, especially where, as will be the case here should the proposed settlement be finalized, Class Counsel has obtained a superior result. *See In re Agent Orange Prod. Liab. Litig,* 611 F. Supp. 1296, 1306 (E.D.N.Y. 1985) (criticizing lodestar approach as one that "tends to encourage excess discovery, delays and late settlements, while it discourages rapid, efficient and cheaper resolution of litigation"), *aff'd in part, rev'd in part on other grounds*, 818 F.2d 226 (2d Cir. 1987); *accord Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 49 (2d Cir. 2000) (comparing lodestar analysis to "resurrect[ing] the ghost of Ebenezer Scrooge, compelling the district courts to engage in a gimlet-eyed review of line-item fee audits."). Indeed, the Second Circuit disfavors application of the lodestar method as anything but a "cross check" on the percentage of the fund award because the "lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart*, 396 F.3d at 122 (internal quotations and citation omitted). The percentage method is deemed preferable "because it reduces the incentive for counsel to drag the

case out to increase the number of hours billed; also, fewer judicial resources will be spent in evaluating the fairness of the fee petition." *Hicks v. Morgan Stanley and Co.*, 2005 U.S. Dist. LEXIS 24890 at *23 (S.D.N.Y. October 24, 2005) (citation omitted).

In the Second Circuit, courts commonly approve percentage awards of between 20% to 33.3% of the class recovery. *Cent. States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care*, L.L.C., 504 F.3d 229, 249 (2d Cir. 2007) (affirming award of fees of 30% of recovery); *Warren v. Xerox Corp.*, 2008 U.S. Dist. LEXIS 73951, at *22 (E.D.N.Y. Sept. 19, 2008) (awarding class counsel attorneys' fees and expenses of $4 million, which "constitutes approximately 33.33% of the total settlement, and is comparable to sums allowed in similar cases"); *In re Gilat Satellite Networks, Ltd.*, 2007 U.S. Dist. LEXIS 68964, at *58-59 (E.D.N.Y. Sept. 18, 2007) (CPS) (awarding 25%); *In re Dime Sav. Bank*, 1994 U.S. Dist. LEXIS 2527, at *6-7 (E.D.N.Y. Feb. 23, 1994) (listing cases and noting that percentage rates between 20 and 30% are not uncommon);

Indeed, in *In re Medical X-Ray Film Antitrust Litig.*, 1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. Aug. 7, 1998), this Court awarded attorneys' fees of 33.33%, holding "[t]his request appears reasonable and is well within the range accepted by courts in this circuit." *Id.*, at *20, *citing In re PaineWebber Sec. Litig.*, Nos. 86-6776, 89-2838, 1994 U.S. Dist. LEXIS 10873 (S.D.N.Y. Aug. 5, 1994) (33 1/3%); *In re Crazy Eddie*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (33.8%). Courts in the Second Circuit also have recognized that 25 percent of the common fund is typically the benchmark for cases involving settlements which create a benefit for the class in the range of one to fifty million dollars. *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 486 (S.D.N.Y. 1998) and cases cited therein. Because the value of the proposed

settlement here is within this range, a fee of 20% to 33.3% of the common fund would not constitute a windfall for counsel. *See, e.g., In re Gilat Satellite Networks, Ltd.*, 2007 U.S. Dist. LEXIS 68964 at *51-52 ("Given the modest size of the total settlement [of approximately $20 million] I am not concerned that a 30% fee would constitute a windfall for counsel").

In addition, a percentage method is consistent with, and intended to mirror, the market place for private practice where contingent fee attorneys typically negotiate percentage fee arrangements with their clients. *See In re Am. Bank Note Holographies, Sec. Litig.*, 127 F. Supp. 2d 418, 432 (S.D.N.Y. Jan. 2, 2001) (citing *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 397). Here, the risks at the outset were significant. Plaintiff brought a claim under RESPA that had not been ruled upon previously in the Second Circuit. Chase, the defendant, had unlimited resources and retained some of the most experienced RESPA lawyers in the country from three large and well-established firms. *See* Giskan Decl. at ¶20.

Despite the riskiness of the case, and after five years of litigation, Class Counsel was able to make each qualified Class member whole, plus interest. Under these circumstances, this Court can find that a reasonable Class member would have agreed to pay 25% of that recovery in attorneys' fees.

Of course, under this Settlement, Chase has agreed to make each class member whole **and** pay the Class' attorneys' fees.

## II.    The *Goldberger* Factors

Whether the Court utilizes the percentage or lodestar method, the Second Circuit has set forth six factors to assess the reasonableness of a fee request in the class action context: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the

6

risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the

settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50 (holding that courts

in the Second Circuit may be guided by these traditional criteria when determining the

reasonableness of a fee award in a common fund case). Applying the *Goldberger* factors here

strongly supports the award of attorneys' fees sought by Class Counsel.

### A.      The Time and Labor Expended

### 1.      Class Counsel's Lodestar

The Second Circuit recommends (but does not require) analyzing the lodestar of

plaintiff's counsel only as a "cross-check" on the reasonableness of the requested percentage.

*Goldberger*, 209 F.3d at 50; *In re Gilat Satellite Networks, Ltd.*, 2007 U.S. Dist. LEXIS 68964, at

*40.  In cases such as this, where a small firm efficiently prosecutes the case and obtains an

outstanding result, Plaintiff submits that lodestar should be used only as a cross-check --

particularly where every other *Goldberger* factor overwhelmingly supports the fee requested by

Plaintiff.

Plaintiff's counsel's lodestar to through November 4, 2009 is $932,586.  This reflects

1766 hours expended over the past five years of litigation.[3]  Giskan Decl. at ¶18.

Plaintiff's counsel did not litigate this case with an eye towards being paid on the basis of

lodestar.  Rather, we litigated this case with an eye towards efficiently obtaining the best possible

relief for the Class.  Indeed, in using the lodestar as a cross check on the reasonableness of the fee

award, the court in *In re Warner Communications Sec. Litigation*, 618 F. Supp. 735 (S.D.N.Y.

1985), recognized the short comings of the lodestar method in common fund contingency cases:

---

[3] Class Counsel's lodestar is based on partner rates ranging from $530 -$560 per hour and paralegal rates
ranging from $150-$175 per hour.

7

> Where success is a condition precedent to compensation, 'hours of time expended' is a nebulous, highly variable standard, of limited significance.  One thousand plodding hours may be far less productive than one imaginative, brilliant hour.  A surgeon who skillfully performs an appendectomy in seven minutes is entitled to no smaller fee than one who takes an hour; many a patient would think he is entitled to more.

*Id.* at 747 (and holding that the "present request for a fee of slightly less than 25% of the settlement fund is quite reasonable in relation to the fees typically awarded in complex class actions.") (internal quotations and citations omitted).  More hours would not have resulted in a better outcome and counsel should not be punished for their efficiency.  In a case such as this, where a 100% monetary recovery, plus interest, has been obtained for the Class, a higher lodestar should not be necessary for a higher fee.[4]

## 2.      Class Counsel Litigated This Case For Five Years

Although Plaintiff's counsel prosecuted this case efficiently, they litigated it for over five years.  Plaintiff's counsel have taken this case through the complete paces of pre-trial litigation, including the following: an extensive initial factual investigation, consultations with industry experts, and preparation of the original complaint; opposing a motion to dismiss; moving for reconsideration of the Court's order on that motion; successfully appealing the Court's decision on the motion to dismiss to the Second Circuit; amending the complaint and preparing several sets of discovery requests; conducting extensive discovery, including the review of thousands of pages of documents produced by Chase and reviewing and preparing Plaintiff's documents for production, conducting seven depositions of Chase witnesses, defending the depositions of both Plaintiff and her husband, and obtaining an order from Magistrate Judge Mann compelling Chase

---

[4] If lodestar is the basis of the fee award, as Chase most likely will argue, then the first *Goldberger* factor (time expended) becomes the only factor.

to produce additional documents concerning the total number and amount of Post Closing Fees charged; working with an expert and responding to and serving requests for expert discovery; moving for and presenting oral argument on class certification; successfully opposing a motion for summary judgment; engaging in extensive settlement negotiations, including preparation for and attending a full day mediation session at JAMS in April 2009; and conducting additional confirmatory discovery, including, but not limited to, four additional depositions of Chase witnesses and an investigation of Chase's practice of charging of the Post Closing Fee in the subprime channel, which had not been disclosed previously. *See* Giskan Declaration at ¶¶ 3-17. These extensive efforts of Plaintiff's counsel over the past five years have resulted in a full recovery, plus interest, for the Class.

The length of this case also supports the fee requested. *See Diamond v. Fogelman*, 1992 U.S. Dist. LEXIS 12076, at *4-5 (E.D.N.Y. July 30, 1992)(CPS) (recognizing that a 37% of fee award was appropriate in the *Emerson* action, CV-87-4046 (E.D.N.Y. April 19, 1992), which "involved a case which lasted four and one-half years.").

Class counsel's request of $6.6 million reflects a relatively high multiplier of approximately 7 (after the deduction of expenses).[5] That multiplier, however, is not unprecedented. *See In re EVCI Career Colleges Holding Corp. Securities Litig.*, 2007 U.S. Dist. LEXIS 57918 at *43 (S.D.N.Y. 2007)(collecting cases awarding multipliers on the higher end of the acceptable range, up to and including a 6.96 multiplier); *The Stop & Shop Supermarket*

---

[5] Class Counsel's lodestar is through November 4, 2009. In addition, Class Counsel seeks reimbursement of expenses in the amount of $25,559.25 and anticipates that it will spend significant additional time before the Settlement is final, including preparing papers in support of the motion for final approval and assisting Class members with the claims process. Accordingly, the multiplier will be lower at the time of final approval.

*Company v. Smithkline Beecham Corp.*, 2005 U.S. Dist. LEXIS 9705 (E.D.N.Y. 2005)(awarding

multiplier of 15.6 for a settlement recovering 11% of damages).

### B.    The Magnitude and Complexities of the Litigation

This was not an easy case.  In fact, this was an extremely complex case that made new law

that is beneficial to both the Class and future borrowers.

This case presented two fundamental issues of first impression for the courts: (1) whether

an unearned fee which was not divided with a third party could violate RESPA; *see Cohen v. J.P.*

*Morgan Chase & Co.,* 498 F.3d 11 (2d. Cir. 2007); and (2) whether there must be a direct tie

between the fee charged and the settlement service purportedly provided in exchange; *see Cohen*

*v. J.P. Morgan Chase & Co.,* 608 F. Supp. 2d 330 (E.D.N.Y. 2009).   In addition to establishing

new law in the Second Circuit, this case has been cited favorably by district courts in the Fifth

Circuit, Ninth Circuit and Eleventh Circuit.[6]  *See also, generally*, "Will Settlement Service

Providers Be Forced To Work For Their Money" the Validity and Effect of Cohen v. J.P. Morgan

Chase & Co.," 498 F.3d 11 (2d. Cir. 2007)," 77 U. Cin. L. Rev. 297 (2008).

Proving the case was equally daunting.  Plaintiff was essentially placed in the position of

having to prove a negative: *i.e.*, that there were no services provided by Chase in exchange for the

---

[6] *See, e.g.,  In re Merscorp Inc.*, 2008 U.S. Dist. LEXIS 40473 at *37-40 (S.D. Tex. May 16, 2008)
(relying on *Cohen* to hold that "section 8(b) applies to undivided fees."); *Bushbeck v. Chicago Title Ins.
Co.*, 632 F. Supp. 2d 1036, 1042 (W.D. Wash. 2008) ("Relying on the reasoning in *Cohen*, the court
determines that the Bushbecks need not have alleged a split of the unearned fee and allows the claim to
proceed.")); *Busby v. JRHBW Realty, Inc.*, 2009 U.S. Dist. LEXIS 41720, at 28-40 (N.D. Ala. Apr. 20,
2009)(holding, "[b]ased upon an extension of the reasoning set forth in *Cohen v. J.P. Morgan Chase &
Co.*, No. CV-04-4098 (CPS), 608 F. Supp. 2d 330, . . . the court concludes as a matter of law that the array
of services defense for the type of items described by RealtySouth is not a valid counter to Busby's § 8(b)
no services claim. . . . because the services listed by RealtySouth (and regardless of whether they were
actually provided) are not settlement-related and/or provide little or no benefit to the borrower, they cannot
defeat a § 8(b) no services claim.").

fee in question.  Thus, this is not a case where there has been a whistleblower or a  "smoking gun" document discussing the Post Closing Fee.  Instead, in order to survive summary judgment, Plaintiff had to dissect and discredit the testimony of Chase's employees and highlight the inconsistencies and gaps in the documentary evidence.

Moreover, Plaintiff had no investigation by federal authorities to pave the way.  When awarding a 33.3% fee based on a $39 million common fund in *In re Medical X-Ray Film Antitrust Litig.*, this Court recognized that "class counsel did not have the benefit of a prior government litigation or investigation."  1998 U.S. Dist. LEXIS 14888 at *22.  The same applies here and favors a similar award as a percentage of the fund.  *Cf. Goldberg*, 209 F.3d at 54 ("counsel benefitted from the spadework done by federal authorities during the criminal and civil actions brought against Drexel and Milken").

The magnitude and complexities of the litigation support the fee requested.

### C.    The Risk of the Litigation

Plaintiff faced substantial risk in this litigation.

Legal novelty is one of the best indicators of risk.  *See, e.g. Detroit v. Grinnell Corp.,* 495 F.2d 448,  471 (2d Cir. 1974).  Indeed, when Plaintiff's case was brought in 2004, courts in the Second Circuit had not addressed one of the key issues presented by this case:  whether an unearned fee which was not split with a third party violated RESPA.  Indeed, prior to the Second Circuit's ruling in this case, this Court held in March 2005 that an undivided fee, such as the Post Closing Fee, did not violate RESPA and granted defendant's motion to dismiss.

Plaintiff appealed the district court's order and presented an issue of first impression to the Second Circuit, *i.e.,* whether the Post Closing Fee -- an unearned and undivided fee – could be the

11

basis for RESPA and GBL § 349 violations.  Clearly, this ground breaking issue loomed

significant in the case.  *See, in contrast, Goldberg*, 209 F.3d at 54 (holding that risk of litigation

was low where there "was no ground breaking issue which loomed significant in the case.").  In

August 2007, the Second Circuit ruled in Plaintiff's favor, holding that an unearned and

undivided fee may violate RESPA and GBL § 349.  *See Cohen v. JP Morgan Chase & Co.*, 498

F.3d at 126, 127.  Plaintiff was thus instrumental in shaping new RESPA and consumer

protection law of great benefit to homeowners in the Second Circuit.

On Chase's motion for summary judgment, Plaintiff again presented an issue of first

impression to the District Court:  whether the Post Closing Fee had to be "in exchange for" a

settlement service in order to be a legitimate settlement fee under RESPA.  Once again, a pivotal

issue in this case had not been decided by any court in the Second Circuit.  This time, the District

Court ruled in Plaintiff's favor, holding that the "in exchange for" standard was the applicable test

under RESPA.  *See Cohen v. JPMorgan Chase & Co.*, 608 F.Supp.2d at 339.

Because Class Counsel has prosecuted this case on a contingency basis, there was the

additional risk that Class Counsel would be paid nothing for their efforts.  *See In re Crazy Eddie*,

824 F. Supp. at 326 (awarding 33.8% of settlement fund as attorneys' fees; "[t]he attorneys' fees

requested were entirely contingent upon success.  Class Counsel risked time and effort and

advanced costs and expenses, with no ultimate guarantee of compensation.").

Risks are usually assessed at the time of the filing of the case. *Goldberger*, 209 F. 3d at

55.  With the novel issues presented, this case was risky from day one.  However, the risks of

continued litigation increased greatly when the Court dismissed the case.  Plaintiff and Class

Counsel assumed the heightened risk, persevered and eventually prevailed to the great benefit of the Class.

Given the significant risks faced by Plaintiff in this case, the requested fee award is reasonable.

### D.  The Quality of Representation

During the lengthy pendency of this litigation, Plaintiff and the Class have been represented by a small law firm which provides its services almost exclusively on a contingency basis.[7]  In contrast, Chase has been represented by three national law firms: (1) Arent, Fox, Kintner, Plotkin & Kahn, PLLC, (2) Wilmer, Cutler, Pickering, Hale and Dorr LLP, and most recently (3) Burke Warran MacKay & Serritella, P.C.,  as well as Chase's in-house counsel.  The fact that a small law firm working on a contingency basis has prevailed against three of the best and most well funded law firms in the country, and achieved an outstanding result for the Class, is a notable achievement.  *See, e.g., In re Medical X-Ray Film Antitrust Litig.*, 1998 U.S. Dist. LEXIS 14888 at * 23 (awarding fee of 33.3% of the common fund and recognizing the high quality of counsel as a factor supporting this award; "plaintiffs' counsel confronted defense counsel from highly respected law firms that raised several challenges to the merits of this case.").

One of the best measures of the quality of representation is the result achieved. *Goldberger*, 209 F. 3d at 55.  The proposed settlement which will provide the majority of Class members with the rare opportunity to recover 100%, plus interest, of any Post Closing Fee paid to Chase.  Moreover, we have been instrumental in obtaining injunctive relief (Chase stopped

---

[7] The resume of Class Counsel, Giskan Solotaroff Anderson & Stewart LLP, is attached as Exhibit 2 to the Giskan Declaration.

charging the Post Closing Fee during the litigation) and issuing forth new RESPA and consumer protection law of great benefit to homeowners and the general public in the Second Circuit.

This factor clearly supports the fee requested by Class Counsel.

### E.    The Requested Fee in Relation to the Settlement

The parties agree that the maximum value of the Settlement, before the additional benefit to the Class of Chase's agreement to pay attorneys' fees and expenses and the cost of notice and settlement administration, is $19.9 million.  Because attorneys' fees are to be paid separately from the relief to the Class, the amount of attorneys' fees should be added to the value of the settlement before calculating the percentage that the attorneys' fees represent.  *See* Manual for Complex Litigation Section 21.7; *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) ("The award to the class and the agreement on attorney fees represent a package deal. Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery.").

Here, the requested fee of $6.6 million represents 25% of the value of the settlement ($6.6 million divided by $26.5 million).  For settlements in the range of $1 million to $50 million such as here, courts in the Second Circuit commonly award 20-33.3% as attorneys' fees. *See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. at 486 and cases cited therein; *In re Gilat Satellite Networks, Ltd.*, 2007 U.S. Dist. LEXIS 68964 at *51-52 (holding that "[g]iven the modest size of the total settlement [of approximately $20 million] I am not concerned that a 30% fee would constitute a windfall for counsel").  For a settlement in which members of the Class receive a 100% cash refund, plus interest, plus attorneys' fees, the percentage requested here is more than reasonable.

### F.     Public Policy Considerations

In addition to the substantial relief in the proposed settlement, we already have achieved

outstanding benefits for homeowners and the public.

First, Chase no longer charges the Post Closing Fee.  At the time it ceased charging the

fee, Chase was collecting approximately $2.6 million in Post Closing Fees annually.  Giskan

Decl. at ¶10.  This lawsuit and the appeal to the Second Circuit was a substantial factor

contributing to Chase's decision to stop charging the Post Closing Fee and undoubtedly made

other mortgage banks re-evaluate their fee structures.  *Id.*, Exhibit 3 to the Giskan Declaration.

Second, this lawsuit, which resulted in the Second Circuit holding for the first time that

an unearned and undivided fee may violated RESPA and GBL § 349, has strengthened

homeowner and consumer protections.  Homeowners and consumers have also benefitted from

the district court's recent opinion holding that there must be a direct tie between the fee in

question and the purported settlement service provided in order for the fee to be earned.  *See*

*Cohen v. J.P. Morgan Chase & Co.,* 608 F. Supp. 2d at 340 (holding "[a] rational jury could find

that the fee was not in fact charged 'for' services, but that instead it was an overhead charge, or

another form of fee unconnected to compensable settlement services.  Defendant fails to meet

the standard for summary judgment on this claim.").  *See also, In re Merscorp Inc.*, 2008 U.S.

Dist. LEXIS 40473 at *37-40 (S.D. Tex. May 16, 2008) (relying on *Cohen* to hold that "section

8(b) applies to undivided fees."); *Bushbeck v. Chicago Title Ins. Co.*, 632 F. Supp. 2d 1036, 1042

(W.D. Wash. 2008) ("Relying on the reasoning in *Cohen*, the court determines that the

Bushbecks need not have alleged a split of the unearned fee and allows the claim to proceed.");

*Busby v. JRHBW Realty, Inc.*, 2009 U.S. Dist. LEXIS 41720, at 28-40 (N.D. Ala. Apr. 20,

2009)(holding, "[b]ased upon an extension of the reasoning set forth in *Cohen v. J.P. Morgan*

15

*Chase & Co.*, No. CV-04-4098 (CPS), 608 F. Supp. 2d 330, . . . the court concludes as a matter of law that the array of services defense for the type of items described by RealtySouth is not a valid counter to Busby's § 8(b) no services claim. . . . because the services listed by RealtySouth (and regardless of whether they were actually provided) are not settlement-related and/or provide little or no benefit to the borrower, they cannot defeat a § 8(b) no services claim.").

Lastly, there is a public policy in favor of rewarding counsel who persevere through risky litigation and achieve outstanding results for the class they represent. Here, after this case was dismissed in 2005, Class Counsel persevered and succeeded on appeal, tenaciously pursued discovery, and obtained a recovery in which members of the Class can receive a refund of 100% of the Post Closing Fee paid, plus interest. Such perseverance and success should be rewarded.

Public policy considerations strongly support awarding attorneys' fees in the range of 20-33.33%.

## III.   Other Considerations Support the Fee Requested

### A.   The Fee Requested Reflects A Reasonable Deal for Class Members

A percentage method is consistent with, and intended to mirror, the market place for private practice where contingent fee attorneys typically negotiate percentage fee arrangements with their clients. *See In re Am. Bank Note Holographies, Sec. Litig.*, 127 F. Supp. 2d at 432 (citing *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 397).

Here, the risks at the outset were significant. Plaintiff brought a claim under RESPA that had not previously been ruled upon in the Second Circuit. The defendant had unlimited resources and retained some of the most experienced RESPA lawyers in the country.

16

Despite the riskiness of the case, and after 5 years of litigation, Class Counsel was able to make each Class member whole, including interest.  Under these circumstances, any reasonable Class member would have agreed to pay 25% of that recovery in attorneys' fees.

Of course, under this settlement, Chase has agreed to make each Class member whole **and** pay Class Counsel's fees.

### B.   Promotion of Efficiency and the Reward of Results

Chase will undoubtedly argue that the award of attorneys' fees should be based solely on lodestar.  Basing the fee award on lodestar alone sends all the wrong messages.  First, fees would be based on the amount of time spent rather than efficiency.  Second, it would elevate time spent over results achieved.

Here, Class Counsel prosecuted the case efficiently and achieved an outstanding result. Class Counsel should be rewarded, not punished.  While Class Counsel acknowledges that they seek a multiplier at the high end of the range, the results of this case warrant it, as the Class is made whole under the settlement.

One of the risks Chase undertook when it charged the Post Closing Fee was that it might have to pay attorneys' fees if that fee was successfully challenged.  The amount of the fee sought here is related to the number of Post Closing Fees improperly collected and which Chase has agreed to reimburse in full and in cash, plus interest.  Having undertaken that risk, and having collected millions of dollars in Post Closing Fees, Chase should not now be heard to complain that the attorneys' fees sought are too high.  If it is high, this is because Chase collected a high number of Post Closing Fees.  A fee of 25% is well within the range of reasonable fees that Chase should have expected to pay when it decided to add a Post Closing Fee to class members' settlement fees.

17

Attorney's fees are a benefit to the Class.  Manual for Complex Litigation Section 21.7 at p.335; *Johnston v. Comerica Mortg. Corp.*, 83 F.3d at 246 ("The award to the class and the agreement on attorney fees represent a package deal. Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery.") Although the fees awarded here will not be deducted from the recovery of the Class, they should still be considered a benefit to the Class.

Thus, any reduction of the fee requested inures not to the benefit of the Class but to the benefit of Chase (who would keep the money the Court does not award).[8]  Ironically, if the fee is reduced, it is Chase that would benefit from the efficiency of Class Counsel, not the Class.  Such a result would be contrary to the interests of the Class.

## CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that the Court grant Class Counsel's Motion for an award of attorneys' fees and expenses in the amount of $6.6 million.

Dated: November 6, 2009
New York, New York

GISKAN SOLOTAROFF ANDERSON & STEWART LLP


By: _____/s/_____
          Oren Giskan (OG 3667)
          Catherine E. Anderson (CA 5129)
          11 Broadway, Suite 2150
          New York, NY 10004
          (212) 847-8315

          *Attorneys for Plaintiff*

---

[8] Plaintiff does not know whether Chase will argue that the Court should consider its resources when determining a reasonable fee. However, Chase can clearly afford to pay the fee requested. *See* Exhibit 4 to the Giskan Decl. (noting Chase's $3.6 billion profit in the third quarter of 2009). Indeed, the fee requested for 5 years' work is about a third of what Chase's CEO earns in a year. *See* Exhibit 5 to the Giskan Decl.