IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
SYLVIA C. COHEN, On Behalf of Herself and All
Other Persons Similarly Situated,

C.A. No. 04-CV-4098
(ILG/RLM)

                        Plaintiff,

vs.

JP MORGAN CHASE & CO. and JP MORGAN
CHASE BANK,
                     Defendants.
-----------------------------------------------------------------------x

## DECLARATION OF CATHERINE E. ANDERSON IN SUPPORT OF FINAL APPROVAL OF THE SETTLEMENT

I, Catherine E. Anderson, declare and state as follows:

1. I am a member of Giskan Solotaroff Anderson & Stewart LLP, counsel to Plaintiff Sylvia C. Cohen and the putative class in the above-captioned action. I submit this declaration in support of Plaintiff's motion for final approval of the settlement. I am fully familiar with the facts set forth below.

2. In September 2004, Plaintiff commenced this consumer class action. Plaintiff alleged Chase wrongfully charged her and other home mortgagors an unearned "Post Closing Fee"[1] in violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607 ("RESPA"), Section 8(b), and the New York consumer protection statute, General Business Law, § 349 ("GBL § 349").

3. In December 2004, Chase moved to dismiss Plaintiff's complaint on the grounds that the Post Closing Fee was not a split fee and that it was disclosed by Chase on the HUD-1 Settlement Statement. Chase's motion was granted. Plaintiff moved for reconsideration, presenting, *inter alia*, new evidence of Chase's unfair bargaining power, but her motion was denied.

---

[1] Capitalized terms used herein shall have the same meaning as defined terms in the Stipulation of Settlement dated August 20, 2009, entered into between the parties.

4. Plaintiff appealed to the Second Circuit, presenting an issue of first impression, and won. In the precedential decision, *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126, 127 (2d Cir. 2007), the Second Circuit held that an unearned and undivided fee may violate RESPA and GBL § 349, and that the Plaintiff adequately stated her claims.

5. The case was reinstated in the district court, and on October 31, 2007, Plaintiff filed the First Amended Class Action Complaint

**Discovery**

6. Discovery commenced in October 2007. Discovery was difficult and Chase was less than forthcoming with information concerning the Post Closing Fee, even after serial amendments to its discovery responses. Although Class Counsel spent numerous hours meeting and conferring with defendants on discovery, Class Counsel ultimately was forced to seek a discovery conference and Order from the Court.

7. On October 31, 2007, Chase served its Initial Disclosure Statement pursuant to Rule 26(a) and on June 9, 2008, Chase amended its Initial Disclosures. On January 9, 2008, Chase filed its responses to Plaintiff's first Set of Document Requests, Plaintiff's First Interrogatories and Plaintiff's Deposition Discovery Requests. On May 12, 2008, Chase amended its Responses to Plaintiff's First Set of Interrogatories. On July 9, 2008, Chase provided its Second Amended Responses to Plaintiff's First Set of Interrogatories. Despite these numerous amendments, Chase failed to provide concrete information on the number and amount of Post Closing Fees charged in response to Plaintiff's Interrogatory Request No. 7 ("Identify the number of Post Closing Fees charged by Chase") and Request No. 8 ("Identify in dollar amounts the total in Post Closing Fees charged by Defendants"). Accordingly, in July 2008, Class Counsel sought a conference with the

2

Court.

8. On July 18, 2008, a discovery conference was held via telephone with Magistrate Judge Mann. The Court ordered that Chase "redraft its response to Interrogatories 7 and 8, [ ] provide documents summarizing the number and amount of post-closing fees, and [ ] provide sworn statements regarding documents that have been sought by not located." In response to the Court's order, Chase stated that "data contained in Chase's electronic financial databases reflect that Chase charged approximately 50,800 Post Closing Fees since September 2001" and that "data contained in Chase's electronic financial databases reflect that Chase charged approximately $13 million in Post Closing Fees since September 2001." Chase also produced documents in response to the Court's July 18 Order which summarized the number and amount of the total Post Closing Fees charged by Chase. Importantly, neither Plaintiff's discovery requests nor the Court's July 18 Order distinguished between the prime and subprime retail channels at Chase.

9. Class Counsel learned only after discovery had closed that the information Chase provided in response to the Court's July 18, 2008 Order was not accurate and under represented class size and damages by approximately $4.4 million. After Chase lost on summary judgment, Chase disclosed for the first time that its subprime divisions also charged the Post Closing Fee and that the relevant information is available in Chase's electronic databases.

10. Class Counsel reviewed thousands of pages of documents produced by Chase. Class counsel also deposed two Chase employees, three former Chase employees, a Fed. Rule Civ. Proc. 30(b)(6) witness designated by Chase, and the Chase lawyer who performed the Cohens' closing.

11. Both Plaintiff, who is 70 years old, and her husband, Richard Cohen, who is 80 years old, were deposed by Chase over the course of two days.

12. Class Counsel also engaged in expert discovery, and the parties exchanged expert reports.

## The Summary Judgment and Class Certification Motions

13. On July 18, 2008, Chase moved for summary judgment.

14. On August 27, 2008, Plaintiff moved for class certification, with the Class defined as "all persons who were charged a Post Closing Fee by Chase during the period September 2001 through the present, and a Subclass of all persons in the State of New York who were charged a Post Closing Fee by Chase during the period September 2001 through the present." Chase opposed class certification primarily on the grounds that Plaintiff did not satisfy her burden of showing that this action is subject to class-wide proof.

15. Both the summary judgment motion and the motion for class certification were fully briefed. Oral argument was held on the summary judgment motion on October 2, 2008, and on the class certification motion on October 30, 2008.

16. On January 28, 2009, the district court denied Chase's motion for summary judgment on both the RESPA Section 8(b) and GBL §349 claims. *Cohen v. J.P. Morgan Chase & Co.*, 608 F.Supp.2d 330, 333 (E.D.N.Y. 2009). Immediately thereafter, Chase requested that the parties seek a stay of the proceedings, including the Court's pending class certification decision, in order to explore settlement.

## Settlement Negotiations

17. From February to August 2009, the parties spent numerous hours negotiating the terms of the settlement. The settlement negotiations were intensive and hard fought and were largely overseen by a neutral third party mediator, Peter Woodin, Esq. of JAMS. On April 27, 2009, an all

4

day mediation session was held at JAMS during which the material terms of the Settlement were established.

18. Once the material terms of the Settlement were finalized, the parties negotiated the incentive award to the Plaintiff and attempted to negotiate the issue of attorneys' fees and expenses to Class Counsel. These negotiations took place throughout the summer of 2009. In August 2009, an agreement was reached on the amount of the incentive award ($15,000, including the Post Closing Fee paid by Plaintiff to Chase, plus interest thereon) to be paid to the Plaintiff for her efforts in bringing this litigation and the results achieved. The parties also agreed in August 2009 that Chase would pay Class Counsel's attorneys' fees and expenses in an amount to be decided by the Court with a limited right of appeal. The parties agreed that Chase would not appeal an order awarding attorneys' fees and expenses to Class Counsel that is below 3.75 times the lodestar submitted by Class Counsel to the Court and that Class Counsel would not appeal an order awarding attorneys' fees and expenses above 3.75 times the lodestar submitted to the Court.

19. From April to July, 2009, Class Counsel engaged in additional discovery to confirm the terms of the Settlement. Class Counsel took four more depositions of Chase employees and reviewed additional documents, including documents relating to the charging of the Post Closing Fee in Chase's subprime channel, closing cost credits given to members of the Class and the data maintained in Chase's computer systems.

**The Settlement**

20. On August 20, 2009, the parties entered into the Stipulation of Settlement. On August 21, 2009, Plaintiff moved for preliminary approval of the Settlement.

21. On September 23, 2009, the Court granted preliminary approval of the Settlement.

In accordance with the Order, on October 23, 2009, Notice of the Settlement was mailed directly to 60,376 individuals positively identified from Chase's records as members of the Class. Because Chase could not specifically identify payors of Post Closing Fee from one of its loan origination systems, additional notice was also mailed to 12,260 of Chase customers in this loan origination system that may have paid a Post Closing Fee.

22. Pursuant to the Notice, Class members had until December 7, 2009, to request exclusion from or object to the Settlement Agreement. Requests for exclusion have been received by 13 Class members, as set forth in Exhibit A hereto. Three of the individuals who initially requested exclusion, Karen and George Chimenti, Stephen Dora and Julie Witney, spoke with Class Counsel and decided thereafter to participate in the Settlement and revoked their requests for exclusion. Only one Class member, Mohamed Keita, has filed an objection. The objection is based primarily on additional actions by Chase which Mr. Keita believes have harmed him and which are not released by this Settlement.

## Plaintiff's Efforts In This Litigation

23. In addition to both Plaintiff and her husband being deposed, Plaintiff and her husband were instrumental in commencing and pursuing this litigation. Prior to bringing this action to the attention of counsel, the Cohens asked many Chase employees, including the lawyer representing Chase at the closing, what the Post Closing Fee was for, but no one at Chase could provide an answer.

24. Plaintiff and her husband Richard Cohen, a semi-retired lawyer, reviewed the legal pleadings, and drafts thereof, in this action to monitor the litigation on behalf of the Class and were involved in the settlement negotiations.

25.     In July 2009, Chase placed a negative marking on the Cohens' Chase mortgage loan file. This caused the Cohens undue stress and aggravation. On July 16, 2009, in keeping with his standard practice over many years, Plaintiff's husband went in person to make their Chase mortgage payment due August 1, 2009, at the Chase branch located at 349 Fifth Avenue, New York, NY 10016. His mortgage payment was not accepted. Mr. Cohen was told by Alexandra Padilla, the Assistant Vice President at the 349 Fifth Avenue Chase branch that a "stop payment" code was placed on his loan because he was involved in litigation with Chase. The Cohens were very distraught by this situation and asked that I assist them in removing the stop payment code so that they could make timely payment on their Chase mortgage.

26.     On July 17, 2009, Mr. Cohen and I met with Ms. Padilla, the Assistant Vice President at the 349 Fifth Avenue Chase branch and the manager, Kathy Keane. I informed them that I was counsel to the Cohens. Mr. Padilla reiterated that when she investigated the "stop payment" code on the Cohens' loan on July 16, 2009, she was informed that it was due to their involvement in litigation with Chase. The present action is the only litigation against Chase in which the Cohens have been involved.

27.     On July 20, 2009, I wrote to counsel for Chase to inform them of this problem and to request that the "stop payment" code be lifted immediately from the Cohens' loan. I explained, *inter alia*, "[i]f the 'stop payment' code is not removed from the Cohens' loan prior to August 1, 2009, the Cohens' credit may be damaged and my clients may incur additional damages as a result of the erroneous 'stop payment' code" and that the actions of Chase were retaliatory. Chase neither confirmed nor denied that the "stop payment" code was placed on the Cohen's mortgage loan file in retaliation for bringing this lawsuit, but agreed to remove the code so the Cohens could make

timely payment on their mortgage.

28.     Attached hereto as Exhibit B is a copy of the firm resume of Giskan Solotaroff Anderson & Stewart, LLP.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18th day of December, 2009, in New York, New York.

*Catherine E. Anderson*
Catherine E. Anderson

# EXHIBIT A

## Requests for Exclusion

1) Grigory Betser – 1642 West 9th Street, Apt. 3A, Brooklyn NY 11223
2) Bruce Einhorn – 615 Hort Street, Westfield, NJ 07090
3) Glory Ekpe – 364 W 117th Street, 2A, New York, NY 10026
4) Mary Fontana – 1 Oakride Place, Apt. 4D, Eastchester, NY 10709
5) Richard Holman – 201 East 77th Street, 9-D, New York, NY 10075
6) Hai Tong Huang – 61 Bay 7th Street, Brooklyn, NY 11228
7) Patrick Jordan - 146 Hylan Blvd, Staten Island, NY 10305
8) Oksana Kondrachova – 300 Clifford Street, North Bellmore, NY 11710
9) Rodica Oprisa – 19 Donna Court, Apt. 10, Staten Island, NY 10314
10) Russell T. Rivera – 92-31 57 Avenue, Apt. 1K, Elmhurst, New York 11373
11) William Rozier – P.O. Box 920812, Averne, NY 11692
12) Eugenia Serpico – 4 Forge Fate Drive, #F2A, Cold Spring, NY 10516
13) Italo Zucchelli – 400 West 25th St, #6B, New York, NY 10001

# EXHIBIT B

## GISKAN SOLOTAROFF ANDERSON & STEWART, LLP

### Firm Biography

Giskan Solotaroff Anderson & Stewart, LLP is a firm with significant experience in complex litigation involving consumer fraud, antitrust, and employment discrimination litigation in state and federal courts, on behalf of plaintiffs and often involving class actions.

**OREN GISKAN** is admitted to practice in the states of New York (1993) and Illinois (1990). He received his law degree from the University of Pennsylvania in 1990 and his Bachelor of Arts from the University of Chicago in 1986.

Mr. Giskan served as lead class counsel in *Sebrow v. Allstate Insurance Company*, E.D. N.Y., CV-07-3929 (settlement of deceptive practice claims regarding non-renewal of homeowners insurance policies), *Education Station v. Yellow Book USA*, Superior Court of New Jersey ($70 million settlement of false advertising claims), *Danielson v. Rockford Memorial Hospital*, Circuit Court of Winnebago County Illinois, No. 01 L 139 (settlement of patient billing claims under the Illinois Consumer Fraud Act), and *Truschel v. Juno Online Inc.*, Supreme Court of the State of New York, New York County, No. 01/602486 (settlement of consumer protection claims regarding failure to provide Internet service). He is actively litigating several other consumer fraud actions throughout the country as lead or class counsel against companies including T-Mobile, LG Electronics, Chase Mortgage, Dow Jones and others. Prior to forming the firm of Giskan & Solotaroff in October 2002, Mr. Giskan worked for the firms of Prongay & Borderud, the Law Offices of James V. Bashian, P.C. and Zwerling, Schachter & Zwerling, LLP, in New York, New York where he was actively involved as lead counsel for plaintiffs in many securities class action lawsuits including: *Hal Bloomberg Trust v. Gencor Industries, Inc.*, M.D. Fla., 99-106-Civ-Orl; *Kaplan v. Prins Recycling Corp.*, D.N.J., 96 Civ. 2444; *In re Lady Luck Gaming Corporation Securities Litigation*, D. Nev., CV-S-95-266-LDG (RLH); *In re American Pacific Securities Litigation*, D. Nev., CV-S-93-00576-PMP; and *In re Foodmaker/Jack-in-the-Box Securities Litigation*, W.D. Wash., No. C93-517WD. He also actively participated as one of the lead counsel in coordinated nationwide class actions against America Online Inc. regarding its deceptive billing practices.

From 1990-92, Mr. Giskan was an associate with Jenner & Block in Chicago, Illinois where he focused on securities and general commercial litigation.

**JASON L. SOLOTAROFF** is admitted to practice in the State of New York. He is a 1990 graduate of Columbia Law School where he was an Editor of the Columbia Law Review and a Harlan Fiske Stone Scholar. He graduated from the Johns Hopkins University with General Honors.

Mr. Solotaroff clerked for the Hon. Eugene H. Nickerson, United States District Court for the Eastern District of New York. Following the clerkship, Mr. Solotaroff was a Staff Attorney at the Legal Aid Society, Criminal Defense Division from 1991 to 1993. In 1993, he joined the

Society's Federal Defender Division. As a federal defender, Mr. Solotaroff represented clients in a wide variety of matters including complex white-collar cases. Of the nine clients he represented in criminal trials, six were acquitted and one received a partial acquittal.

Mr. Solotaroff entered private practice in 1997. Since 1997, he has devoted a substantial part of his practice to the representation of plaintiffs in class action matters. Among the cases in which he has had substantial responsibility are consumer class actions against Juno Online Inc., Lincoln Security Life Insurance of New York, Verizon Communications, American Express and antitrust class actions against Abbott Laboratories, Bristol-Myers Squibb and Astrazeneca Inc. He also represents individuals in employment discrimination and criminal defense matters.

**CATHERINE E. ANDERSON** is admitted to practice in the States of New York and New Jersey. She received her law degree from New York University School of Law in 1995, where she was an editor of the Journal of International Law and Politics and a participant in the Human Rights Clinic. She graduated magna cum laude from Colgate University in 1992, where she was elected Phi Beta Kappa. Ms. Anderson has specialized in consumer fraud and securities class action litigation and has also represented plaintiffs in employment discrimination and ERISA actions.

Ms. Anderson has served as lead or co-lead counsel in consumer class actions against Fry's Electronics, Chase Mortgage, Dow Jones, Inc., Panasonic and Sieba, Ltd. In January 2007, Ms. Anderson settled the class action captioned *Russo v. Whole Arts, et al.*, Supreme Court of the State of New York, County of New York, Index No. 03603037, alleging claims for breach of contract, deceptive conduct in violation of NY GBL § 349, breach of fiduciary duty and fraud on behalf of approximately 170 members of the Whole Arts Group Health Plan (the "Plan"). The class settlement resolved outstanding medical bills incurred by members of the Plan with a market value in excess of $700,000.

Prior to joining Giskan Solotaroff Anderson & Stewart, Ms. Anderson was associated with the firm of Wolf Popper LLP, where she served as lead or co-lead counsel in the following class actions which obtained a substantial recovery for the class: *Garcia v. General Motors Corp.*, Docket No. L-4394-95, Superior Court of New Jersey, Bergen County (obtaining a nationwide settlement of $19.5 million in cash on behalf of a consumer class comprised of 2.6 million owners of GM W-Body cars with allegedly defective braking systems); *Whipple v. Happy Kids, Inc.*, Index No. 99-603371, IAS Part 10, Supreme Court of the State of New York, New York County (obtaining a settlement providing, among other things, an increase of $0.50 per share on behalf of the Happy Kids public shareholders in a revised buyout transaction); *In re Segue Software, Inc., Sec. Litig.*, C.A. 99-10891-RGS, United States District Court, District of Massachusetts (obtaining a cash settlement of $1.25 million on behalf of a class of all persons who purchased the common stock of Segue Software, Inc. during the period July 14, 1998 through April 9, 1999); *Jonas v. Aspec Technology, Inc.*, Lead Case No. CV775037, Superior Court of the State of California (obtaining a settlement with a $13 million cash component and a stock component of 1.75 million shares of the common stock of Aspec Technologies, Inc. for a class comprised of all persons who owned Aspec common stock during the period April 27, 1998 through June 30, 1998); *In re Ugly Duckling Corp. Shareholders Derivative and Class Action*, Consolidated C.A. No. 18843, Delaware Court of Chancery, New Castle County (obtaining an

increase from $2.51 per share to $3.53 per share cash in going private transaction on behalf of a class comprised of the Company's minority shareholders, resulting in an aggregate cash benefit of more than $4.7 million).

**DARNLEY D. STEWART** joined Giskan Solotaroff Anderson & Stewart as Of Counsel on December 1, 2007 and became a member of the firm on March 1, 2008. She is admitted to practice in the States of New York (1993) and Massachusetts (1990). She graduated from Princeton University in 1984 and received her law degree from Northeastern University School of Law in 1990. After law school, Ms. Stewart served as Law Clerk to the Honorable R. Ammi Cutter and the Honorable Mel. L. Greenberg of the Massachusetts Court of Appeals.

Ms. Stewart specializes in employment class and collective actions and has prosecuted high impact cases against a number of large companies, including Ford Motor Company, Gerber, Coastal Corporation, First Union Bank, National Car Rental, General Motors, Nissan, Toyota, and Bank of America. In connection with her work on *Coleman, et al. v. General Motors Acceptance Corporation*, Ms. Stewart was named as a finalist for "Trial Lawyer of the Year" in 2004 by the Trial Lawyers for Public Justice. She has also been named as one of the leading 500 plaintiffs' lawyers in the country and one of America's top 1500 litigators by *Lawdragon* magazine. In addition, Ms. Stewart was selected for inclusion in the list of 2006 and 2007 New York *Super Lawyers*.

Prior to joining Giskan Solotaroff Anderson & Stewart, Ms. Stewart was a partner at the law firm of Bernstein, Litowitz, Berger & Grossmann LLP. At Bernstein Litowitz, Ms. Stewart was the partner in charge of the employment and civil rights practice, and also prosecuted a number of securities class actions, including *Ohio Public Employees Public Retirement System, et al. v. Freddie Mac, et al.*, C.A. 03-CV-4261 (S.D.N.Y.) (obtaining a settlement of $410 million) and *In re Williams Securities Litigation*, Case No. 02-CV-72 –SPF (N.D. Ok.) (obtaining a settlement of $311 million).

Ms. Stewart is a member of the Class and Collective Action Committee of the National Employment Lawyers Association and serves as President of the Executive Board of the New York affiliate (NELA/NY) of that organization. She is also plaintiffs' Co-Chair of the Technology in the Law and Workplace Committee of the American Bar Association's Labor and Employment Section. Ms. Stewart lectures regularly on employment class action issues, and has frequently commented in the media, including the *Wall Street Journal*, the *New York Times*, National Public Radio and the Today show, regarding issues raised in a variety of employment discrimination cases.

From 1991-97, Ms. Stewart was an associate with Schulte Roth & Zabel, LLP, in New York, where she focused on securities, employment and general commercial litigation.

**ROBERT L. HERBST** joined Giskan Solotaroff Anderson & Stewart on June 1, 2009. He is admitted to practice in the states of New York (1973) and Pennsylvania (1979). He received his law degree from Yale Law School in 1972 and his Bachelor of Arts from Princeton University in 1969.

Mr. Herbst has been trying civil and criminal cases to juries for more than 35 years. He grew up on the criminal side of the court as a federal prosecutor in Chicago and Philadelphia, where he specialized in major economic crime and public corruption cases, and as Executive Assistant District Attorney in Brooklyn, New York, where he headed the Investigative Bureaus and supervised all of that office's investigations and prosecutions of white collar crime and official corruption. Since 1983, Mr. Herbst has been in private civil litigation and criminal defense practice, specializing, on the civil side, primarily in civil rights, employment and housing discrimination cases and class actions in the federal and state courts. He has more than 25 years' experience representing victims of police, corrections and other municipal or state misconduct; sexual harassment and other forms of sex or gender discrimination; race, ethnic, and disability discrimination, and consumer and securities fraud. His experience also includes cases involving malpractice, defamation, false allegations of child abuse, inadequate premises security, commercial, banking and real estate disputes, products liability, and intellectual property.