IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
SYLVIA C. COHEN, On Behalf of Herself and All
Other Persons Similarly Situated,                                    C.A. No. 04-CV-4098
                                                                     (ILS/RLM)
                        Plaintiff,

        vs.

JP MORGAN CHASE & CO. and JP MORGAN
CHASE BANK,

                        Defendants.
-----------------------------------------------------------------x

# DECLARATION OF OREN GISKAN IN SUPPORT OF PLAINTIFF'S REPLY ON MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES

I, Oren Giskan, declare and state as follows:

1.  I am a member of Giskan Solotaroff Anderson & Stewart LLP, counsel to Plaintiff Sylvia C. Cohen and the Class in the above-captioned action. I submit this declaration in further support of Plaintiff's Motion For An Award Of Attorneys' Fees and Expenses.

2.  Following issuance of the Notice of Settlement, my office received over 1300 phone calls and 100 emails from class members with questions regarding the settlements. Class Counsel responded to each of the class members and assisted them with the claims process. Where possible, this work was performed by associates, paralegals and law clerks. Class Counsel expects to spend significant additional time assisting class members with the claims process.

3.  Following preliminary approval, a number of issues surfaced with regard to the claims process. Many of these stemmed from Chase permitting the third party claims administrator, Rust Consulting, to establish a fully automated system, without the option of

1

speaking to an actual person, for answering calls from Class members requesting copies of their settlement statements. In addition, Rust created a script for the automated process that incorrectly led class members to believe that they should wait for a copy of the settlement statement before submitting the claim form. Class Counsel worked diligently to resolve these issues including: (1) rewriting the script for the automated system, (2) prevailing upon Chase to honor most of the claim forms that had previously been rejected, (3) persuading Chase to determine whether each claimant paid multiple post closing fees and to refund all of those fees, (4) persuading Chase to have Rust mail a letter to all class members that requested copies of their settlement statement directing them to submit their claim forms, (5) creating a process for class members to confirm Rust's receipt of their claim forms, (6) creating a process for class members to request copies of multiple settlement statements if they obtained more than one mortgage from Chase during the class period, and (7) creating a simple mechanism for class members to request a copy of their settlement statement if Rust's automated system cannot recognize the class member.

4.      In our opening memorandum, Class Counsel listed a lodestar through November 4, 2009 of $932,586.00. From November 5, 2009 through December 16, 2009, Class Counsel's lodestar has increased an additional $176,672.00. Attached hereto as Exhibit 1 is a breakdown of the hours and rates for each professional for the additional lodestar. Class Counsel's total lodestar through December 16, 2009 is $1,109,258.00. Class Counsel's total expenses to date are $26,722.42.

5.      Class counsel's lodestar related to the Motion for Award of Attorneys' Fees through December 16, 2009 is $58,086.50.

6.      Attached as Exhibit 2 is a true and correct copy of the transcript of the

hearing on September 17, 2009 in this action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18th day of December 2009 in New York, New York.

_____
Oren Giskan

# Exhibit 1

TOTAL TIME 11/5/09 - 12/17/09

|         | Hours | Rate | Total       |
|---------|------:|-----:|------------:|
| CEA (P) |  46.1 |  530 | $24,433.00  |
| DDS (P) |   2.5 |  560 | $1,400.00   |
| DJB (PA)| 102.8 |  150 | $15,420.00  |
| DW (PA) |   8.9 |  175 | $1,557.50   |
| JLS (P) |  26.5 |  560 | $14,840.00  |
| KAC (LC)| 114.4 |   95 | $10,868.00  |
| MRD (LC)|  11.5 |   95 | $1,092.50   |
| OSG (P) | 114.3 |  560 | $64,008.00  |
| PJM (LC)|  64.8 |   95 | $6,156.00   |
| SRB (PA)|   2.7 |  150 | $405.00     |
| YP (A)  | 132.7 |  275 | $36,492.50  |

627.2

**$176,672.50**

| |
|---|
| P - Partner |
| A - Associate |
| PA - Paralegal |
| LC - Law Clerk |

# Exhibit 2

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK


SYLVIA C. COHEN, et al.,        *    Case No. 04-CV-4098 (CPS)
                                *
              Plaintiffs,       *    Brooklyn, New York
                                *    September 17, 2009
     v.                         *
                                *
JP MORGAN CHASE BANK, et al.,   *
                                *
              Defendants.       *
                                *
* * * * * * * * * * * * * * * * *

            TRANSCRIPT OF CIVIL CAUSE FOR MOTION
          BEFORE THE HONORABLE CHARLES P. SIFTON
                UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:              CATHERINE E. ANDERSON, ESQ.
                                OREN GISKAN, ESQ.
                                Giskan Solotaroff &
                                  Anderson, LLP
                                11 Broadway, Suite 2150
                                New York, NY  10004

For the Defendant:              NOAH ADAM LEVINE, ESQ.
                                Wilmer Cutler Pickering
                                  Hale & Dorr, LLP
                                399 Park Avenue
                                New York, NY  10022
```

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

Fiore Reporting and Transcription Service, Inc.
67Elaine Drive
Shelton, Connecticut 06484 (203)929-9992

2

```
 1            (Proceedings commenced at 4:45 p.m.)
 2            THE COURT:  Okay.  Who's here for Ms. Cohen?
 3            MR. GISKAN:  Oren Giskan and Catherine Anderson
 4   for Ms. Cohen.
 5            THE COURT:  And for the Banks?
 6            MR. LEVINE:  Noah Levine for Chase, Your Honor.
 7            THE COURT:  Okay.  I've just got a few questions.
 8            What did you have in mind in terms of a final
 9   approval date?
10            MR. GISKAN:  Your Honor, we --
11            THE COURT:  Oh, I see.  It's 90 days from whenever
12   I sign this.
13            MR. GISKAN:  Yes, Your Honor.
14            THE COURT:  Okay.  So if I sign this within the
15   next week, that would take us into where?
16            MR. GISKAN:  December, Your Honor.
17            THE COURT:  All right.
18            We'll have to -- is there any reason we couldn't
19   schedule it in January of next year, or --
20            MR. GISKAN:  Not as far as --
21            THE COURT:  All right.  Okay.
22            MR. GISKAN:  -- plaintiff is concerned.  We'd like
23   it as soon as possible, but --
24            THE COURT:  Sure.  Yes.
25            Okay.  Now I take it you weren't able to come to
```

3

1    any resolution of the attorneys' fees and expenses?  Is
2    that right?
3            MR. GISKAN:  Not as yet, Your Honor.
4            THE COURT:  Well, listen.
5            In terms of a final approval, shouldn't I at a
6    minimum tell the other people involved that this -- that it
7    can't be worse than something and the worst being, I
8    suppose from the standpoint of the banks, your highest
9    demand?
10           In other words, what are you seeking?  A
11   percentage of -- what will you be seeking?  A percentage of
12   the settlement?
13           MR. GISKAN:  Yes, Your Honor.  We've indicated
14   that we would seek up to $6.6 million which we calculated -
15   -
16           THE COURT:  All right.  Well, why don't I --
17           MR. GISKAN:  -- as 25 percent --
18           THE COURT:  -- we don't have to argue the merits
19   of that at this point, but shouldn't the people who are
20   given an opportunity to protest know that?
21           That you're -- and maybe I should ask the
22   defendants first.
23           But shouldn't that -- while saying that the
24   defendants haven't agreed to this, the plaintiff is seeking
25   up to -- what did you say?  6.6?

4

1      MR. GISKAN:  Yes, Your Honor.

2      THE COURT:  Any reason not to do that?

3      MR. LEVINE:  No.  And it's in the draft notice,
4 Your Honor and correct me if I'm wrong.

5      In our draft notice, we've indicated that --

6      THE COURT:  I thought the draft notice just said
7 that -- left it that an application --

8      MR. GISKAN:  Up to -- that will not exceed six
9 point -- an application that will not exceed --

10     THE COURT:  Oh, yes.  Okay.  Good.  Good.  Good.
11 Good.  Okay.  Well, that's what I'll do.

12     I notice that not -- just as a matter of
13 curiosity that you're providing for notice in -- well, I'm
14 taking notice -- note that the notice is written in simple
15 English and finds it to be reasonable.

16     Can you give me the basis for that?  Is this --
17 are Chase's mortgage customers for this period of time
18 literate in English?

19     I mean, how do I know that this is going to -- do
20 you have any loan programs in the New York area, for
21 example, for Hispanics which are conducted entirely in
22 Spanish, or not?  Or do you know?

23     MR. LEVINE:  I actually don't know the answer to
24 that, Your Honor, sitting here today.

25     THE COURT:  Well, maybe you could ask the powers

1  that be one way or the other.
2          It certainly wouldn't be a big deal to convert
3  the notice into Spanish in this day and age.
4          MR. LEVINE:  What I would say is I'm not sure,
5  Your Honor, that -- I don't know anything standing --
6          THE COURT:  Yes.  Well, in court.
7          MR. LEVINE:  -- here today, but I was going to
8  say that I don't know that we could tell with the
9  information we have who should receive what notice is --
10         THE COURT:  Yes.
11         MR. LEVINE:  -- what I should say.  But --
12         THE COURT:  Well, the mortgage unit might be able
13 to respond to our question what do we do at the branch and
14 in the -- what we still call Chinatown?
15         What do we do with an applicant who's only -- who
16 only speaks Spanish, but what -- you know?
17         MR. LEVINE:  What I was going to suggest --
18         THE COURT:  I mean, I notice that the ATMs
19 nowadays -- I don't want to suggest all the languages that
20 appear in an ATM.
21         But ask the mortgage people in New York -- since
22 we're only -- I take it we're dealing just with the New
23 York area, right?
24         MR. GISKAN:  Mostly in new York, but a few
25 outlying --

```
 1              THE COURT:  Right.
 2              MR. LEVINE:  If I may make the suggestion, Your
 3    Honor, if it makes sense, because I haven't seen instances
 4    where completely different notices were sent but we could
 5    put a line in the notice that's -- in Spanish that says "se
 6    hablas Espanol," --
 7              THE COURT:  Right.  Well, yes.
 8              MR. LEVINE:  If there's something like that --
 9              THE COURT:  Something like that.  Although --
10              MR. LEVINE:  -- just that we have the same notice
11    and we don't have to interrupt the whole notice process.
12              THE COURT:  Yes.  Sure.
13              MR. LEVINE:  If I make the contact and asked for
14    one in Spanish.
15              THE COURT:  Yes.  And then translate it into
16    Mandarin or something like this.
17              But give it some thought and send me a letter by
18    the end of next week and we'll make the appropriate change
19    in the order, although I don't, for a number of reasons,
20    some of which we may have burdened you with in terms of
21    getting this pending motion decided before the powers -- my
22    powers that be in Washington tell me I'm taking too long
23    with it.
24              I'm going to file an order -- well, file a
25    decision terminating the motion and then we'll take care of
```

1    the order shortly thereafter.  Is that -- no.
2            That won't mess up your scheduling because you're
3    timing everything from the signing of the order.
4            What do you want?  You represent Washington.
5    Oh.  This isn't a six-month motion?  Oh.  Okay.
6            So this is not yet about to be reported to
7    Washington so we can wait until the end of next week, but
8    otherwise I'm prepared to go ahead and get this resolved.
9            Out of curiosity, what percentage does 6.6
10   represent out of the settlement?
11           MR. GISKAN:  Your Honor, it's 25 percent.
12           THE COURT:  All right.
13           MR. GISKAN:  Because the --
14           THE COURT:  I just didn't -- I want to make sure
15   we're not way out in some --
16           MR. GISKAN:  Right.  But we --
17           THE COURT:  -- left field --
18           MR. GISKAN:  -- we purposely chose it --
19           THE COURT:  -- now that --
20           MR. GISKAN:  -- to be in the range of accepted --
21           THE COURT:  -- sure.
22           MR. GISKAN:  -- percentage awards.  We did
23   calculate that by adding --
24           THE COURT:  Well, you don't --
25           MR. GISKAN:  -- okay.

8

```
 1              THE COURT:  -- you don't need it.
 2              MR. GISKAN:  I just want to be clear.
 3              THE COURT:  You don't need -- our colleague over
 4    in the Southern District, Mr. Bakeroff (ph.) has put us all
 5    on notice that we watch carefully what's going on with this
 6    industry.  Not to lay the burdens of the industry on Chase
 7    Bank.  What?
 8              MR. GISKAN:  I have an updated or revised
 9    proposed order.
10              All I did was --
11              THE COURT:  Oh, good.  Fine.
12              MR. GISKAN:  -- I added in one sentence about the
13    claims period which I noticed was not included in your --
14              THE COURT:  Okay.
15              MR. GISKAN:  -- original proposed order.  It's in
16    the settlement agreement.
17              THE COURT:  Good.
18              MR. GISKAN:  We didn't change any of the terms,
19    but --
20              THE COURT:  Fine.  Fine.  You can --
21              MR. GISKAN:  And if you could --
22              THE COURT:  -- hand that up and we'll --
23              MR. GISKAN:  -- if Your Honor would like us to
24    e mail that to your clerk and --
25              THE COURT:  Which is that?
```

9

1   MR. GISKAN: -- the order. We can e-mail it in
2   word processing form if you want to -- so you don't have
3   to --
4   THE COURT: Oh, okay. All right. All right.
5   MR. GISKAN: We'll take care of it.
6   THE COURT: E-mail it in word processing format
7   means sending it in Word Perfect, or what?
8   MR. GISKAN: We can do it in either Word Perfect
9   or Word, whichever the court prefers.
10  THE COURT: Yes. We do Word Perfect here.
11  All right. Then why don't you -- if you're going
12  to do that, why don't you -- well, now, we'll -- why don't
13  you include what you calculate to be the dates assuming
14  that the order is filed Wednesday? Or Thursday or whenever
15  you choose?
16  MR. GISKAN: Wednesday of next week?
17  THE COURT: Yes. Okay.
18  Anything else that either side thought to bring
19  up?
20  MR. GISKAN: Nothing from the plaintiff, Your
21  Honor.
22  MR. LEVINE: No, Your Honor.
23  THE COURT: All right. We'll get on with it.
24  Thanks.
25  MR. GISKAN: Thank you, Your Honor.

10

1  (Proceedings concluded at 4:55 p.m.)

2  I, CHRISTINE FIORE, Certified Electronic Court

3  Reporter and Transcriber and court-approved transcriber,

4  certify that the foregoing is a correct transcript from the

5  official electronic sound recording of the proceedings in

6  the above-entitled matter.

*Christine Fiore*

_____     November 23, 2009

Christine Fiore

Transcriber